98   539
50a   80
98   539
163   21

## MARY SCHRAMM *et al.*

### *v.*

## MARY E. O'CONNOR *et al.*

*Filed at Ottawa May 14, 1881.*

1. FRAUD—*to set aside contract for land.* A party, before closing a contract for the exchange of city property in this State for land in the State of Indiana, agreed to be governed by the report of a third person, who had bought an adjoining tract, as to its quality, value, etc. Such person, acting as the agent of the said party, examined the land, and made his report to his principal,

upon which the contract was closed: *Held,* that, in the absence of proof of any collusion between the agent and the other party, the contract could not be set aside upon the ground of alleged fraudulent misrepresentations, even if false statements were made by the agent in regard to the quality of the soil and extent of improvements on the land, or value of the premises.

2. Same—*representations as to value.* Mere exaggeration in praise of land, pending a negotiation for its sale or exchange, as to its excellence and value, made by the owner, being expressions only as to matters of opinion, is no ground for setting aside a contract for the sale or exchange of the same, by the grantee, especially where the grantee did not rely upon such representations.

3. Mental capacity—*as affected by drunkenness.* A drinking man's contracts will not be set aside for the alleged want of mental capacity from that cause, where the proof fails to show insanity. If rational, and fully competent to transact any kind of business at the time, his contract, made for the exchange of his wife's land, with her knowledge, consent and approval, will be sustained.

Appeal from the Appellate Court for the First District;—heard in that court on error to the Superior ·Court of Cook county; the Hon. Samuel M. Moore, Judge, presiding.

Mr. Francis Lackner, for the appellants:

It is not claimed that inadequacy of price, of itself, is sufficient ground to set aside a contract. It is evidence of fraud, and may be evidence so satisfactory as to be, of itself, sufficient to set aside the contract. Pomeroy on Specific Perform. of Cont. § 193. And the remedy is in equity. *Escherick* v. *Traver,* 65 Ill. 379; Kerr on Frauds and Mistakes, 332.

But when this inadequacy is accompanied by proof of misrepresentation, undue advantage, weakness of mind, etc., it is sufficient to prevent a specific performance, and may be sufficient to set aside the contract. *Allen* v. *Hart,* 72 Ill. 104; *Thomas* v. *Coultas,* 76 id. 493; Pomeroy, § 196.

Misrepresentation, relating to and connected with a contract, is a ground for denying specific performance. Pomeroy, §§ 210–216; *Proudfoot* v. *Wightman,* 78 Ill. 553; *Fish* v.

*Leser*, 69 id. 394; *Mitchell* v. *King*, 77 id. 462; *Taylor* v.
*Merrill*, 55 id. 61; *Lear* v. *Chouteau*, 23 id. 42.

Messrs. SNOWHOOK, JOHNSTON & GRAY, for the appellees:

It is conceded that mere inadequacy of price is no ground
for setting aside a contract.   Even where it is shown, it must
be accompanied by positive proof of misrepresentation, undue
advantage, or mental weakness.

The cases cited by counsel have no bearing on the case, as
made by the record.   They proceed upon the assumption that
where there is fraud, misrepresentation, undue advantage, or
weakness of mind, from any cause, accompanied by proof of
inadequacy of price, it would be ground for setting aside a
contract, or preventing a specific performance.   There is no
proof of anything of the kind here.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the
Court:

On the 17th of April, 1874, Mary E. O'Connor and August
Meyer entered into an agreement, which was reduced to writ-
ing, and sealed with their private seals, whereby August
Meyer agreed to convey to her a certain lot, with the build-
ings thereon, situated in the city of Chicago, and Mary E.
O'Connor agreed to convey to him a certain 80 acres of
land, in White county, Indiana, and to deliver to him, also,
two cows, one yearling steer, and one horse.   These under-
takings were mutual, and in consideration of each other.
The conveyances were to be made as soon as the clerk and
recorder of White county, Indiana, should certify no lien
existed against the premises which O'Connor was to convey,
and that all pending suits affecting that property were dis-
posed of.

The parties mutually exchanged possession, Meyer remov-
ing upon the land in White county, Indiana, and O'Connor
removing into the building upon the Chicago lot.   Shortly
after this exchange Meyer died, leaving a widow, who has

since intermarried with one Schramm, and four infant children.

Mary E. O'Connor (her husband, Thomas O'Connor, joining her,) filed her bill in chancery, in the Superior Court of Cook county, against the widow of Meyer, and her present husband, and the heirs at law of Meyer, alleging compliance with the contract on her part, the death of Meyer, and survivorship of infant heirs, and their consequent inability to comply with the contract, and praying that specific performance be decreed, etc.

Cross-bills were filed by the widow and her husband, and by the heirs at law of Meyer, by their next friend, alleging that when the contract was made between O'Connor and Meyer, Meyer was insane from excessive drunkenness, and incapable of making a contract; that O'Connor, through her husband, made false and fraudulent representations in regard to the quality of soil, character and extent of improvements, and value of the land, and praying that the contract be canceled and set aside, and possession of the Chicago property restored to them.

Answers were filed (the infants defending by guardian *ad litem*), putting in issue the allegations in both the original and cross-bills.

The cause was heard on bill and answer, cross-bill and answer, and evidence; and the court declining to grant relief, either upon the original or cross-bill, decreed that they both be dismissed. The complainants in the cross-bill sued out a writ of error from the Appellate Court for the First District, on the record and decree in the case of the cross-bill; and that court, after hearing arguments upon the errors assigned, affirmed the decree of the Superior Court. The record before us is brought, by appeal, from the last named decree.

The only evidence of any moment supporting either the charge of insanity or that of false and fraudulent representations, is the testimony given by the widow of Meyer and her

present husband.   They are very much interested in the result of the suit, and their evidence must, consequently, be taken with many grains of allowance.

While it is doubtless true that Meyer was a drinking man, the testimony of disinterested witnesses repels the idea that he was insane, or incapable of transacting ordinary business. His wife, who now so strongly testifies to his incapacity, is shown to have been with him, and cognizant of and approving the entire transaction.   No one thought, at the time, of trying to prevent the trade because of his incapacity, and those who are apparently disinterested, and were intimate enough to understand his mental condition, show that he was all the time rational, and fully competent to transact any ordinary business.

It is not pretended that Mary E. O'Connor, herself, made any false representations in regard to the value of the property, but the claim is, that her husband, acting as her agent, made such representations.   This is entirely disproved by the evidence.   One Maas, a neighbor and friend of Meyer, at the same time of this transaction, or very near thereto, also bought 120 acres of land from Mary E. O'Connor, which adjoined the 80 traded to Meyer.   Before his purchase, or the trade with Meyer was closed, he went to see the land, and Meyer agreed to be governed by his report.   He examined the land and made his report, which satisfied Meyer, and the trade was closed.   The evidence shows that Maas was acting for Meyer, and not for O'Connor, and the proof fails to show collusion between him and O'Connor, or want of fidelity on his part.   If any false statements were made in regard to the quality of soil, character and extent of improvements, or value of the premises, materially affecting the trade, they were made by him, and by no one else.   It may be, that the evidence shows that Thomas O'Connor, in speaking of the property, exaggerated in his praises of its excellence and value; but these are mere matters of opinion, at best, and are generally understood to be harmless puffings, and are inca-

pable of deceiving any one. And in this instance, we think, it is shown that they did not affect Meyer, for he acted and *relied only* upon the report of Maas.

Indeed, it would seem, from all the evidence, that Meyer's trade was, probably, a very good one for his family, if they could but have the patience and perseverance to develop, to its full capacity, the land.

We see no cause to disagree with the Appellate Court, and its decree will, therefore, be affirmed.

*Decree affirmed.*