# ANDREW DILLMAN
## v.
## JOHN W. NADELHOFFER.

1. SALE OF LETTERS PATENT—WARRANTY—FRAUDULENT REPRESENTATIONS.—Appellee sold certain letters patent to appellant, and the only warranty given was that appellee held and retained the full and absolute title to the letters patent. The agreement between the parties set forth that appellee did not warrant the validity of the patents or that they were not infringements. Appellee represented that the patents were genuine and novel, and that he had been offered $25,000 in cash for them. The patents were invalid. *Held*, that the contract in this case can not be avoided for such false representations.

2. FALSE STATEMENTS AS TO VALUE.—False statements made by a vendor of property, as to its value or the price he has been offered for it, will not support an action for deceit

APPEAL from the Circuit Court of Will county. Opinion filed February 20, 1886.

This was a bill in equity by the appellant against appellee seeking to enforce the collection of the sum of $7,000, paid by the former to the latter, and also to enjoin the collection and assignment of one promissory note dated April 18, 1885, due July 1, 1885, for the sum of $8,000, payable to appellee and executed by Edward R. Knowlton and

Andrew Dillman, and indorsed by Calvin Knowlton and Louis E. Dillman.

This money was paid and note given, with other notes, for and in consideration of the assignment to two certain patent rights, and one at the time of the agreement not yet issued, but subsequently issued, and numbered 270,098 and 201,830, being patents on barbed wire, and the one afterward issued to appellant number 231,120. The cause of action was set out in the bill, which was demurred to, the demurrer sustained and an appeal taken to this court. The agreement is as follows, viz:

"Articles of agreement made and entered into, this, the 18th day of April, A. D. 1883, between John W. Nadelhoffer, of the city of Joliet, in Will county, and State of Illinois, party of the first part, and Andrew Dillman and Edward R. Knowlton, of said place, party of the second part.

Witnesseth: That the parties hereto have agreed as follows, to wit: That for and in consideration of the sum of twenty-three thousand dollars, paid by the party of the first part to the party of the second part, the receipt of which is hereby acknowledged, the said party of the first part has, and does by these presents, sell and convey unto the party of the second part, their heirs and assigns, the following property, to wit:

First. All the right, title, interest and claim of the party of the first part in and to the business and co-partnership in the firm John W. Nadelhoffer and Company, of Joliet, Ill., which firm or company are in the business of manufacturing barbed wire, together with all right or claim for any accounts, notes, dues or demands, due or owing to the said firm or company.

Second. All the right and title of the said party of the first part, in and to all the machinery, tools, fixtures, goods manufactured and not manufactured, stock on hand, and to every species of property owned by and belonging to said company, the receipt of which property by the said party of the second part is hereby acknowledged.

Third. The party of the first part also does hereby grant

and sell and convey unto the party of the second part all his rights and titles in and to the following patents, to wit:

The patent of the United States, 201,889, granted to the party of the first part April 2, 1878, for certain improvements in barbed wire for fences. The patent of the United States, 270,098, granted to the party of the first part January 2, 1883, for certain improvements in barbed wires for fences; also the invention, and all right, title and interest in and to a certain machine, or any and all improvements thereof and thereon, for manufacturing the barbed wire described and claimed in said letters patent, for which the party of the first part did, on the 27th day of February, 1883, make application, number 86,465, for letters patent of the United States, and the party of the first part hereby authorizes the commissioner of patents to issue said letters patent, when granted to the party of the second part, as the assignees of his entire right, title and interest therein, and the party of the second part does hereby agree to pay all the necessary charges, fees and expenses for obtaining said letters patent, and making application therefor.

The party of the first part covenants and warrants that he holds and retains the full, complete and absolute title to said letters patent and each of them.

That he has not made conveyance of the same or any part thereof, or has he granted any licenses thereunder.

The said party of the first part, however, does not warrant the validity of either of said patents, or that they are not infringements on any other patents now existing, and the said party of the first part shall not be required to defend any suits now pending, or hereafter to be instituted, wherein the validity of said patents are called in question, but the party of the first part agrees, when required in any such suit, to attend as a witness and produce any evidence or information in his power that may be required or necessary to sustain the validity of said several patents, but the party of the second part to pay his necessary expenses for so doing.

The party of the second part do hereby assume and agree to pay any and all debts and liabilities now existing and owing

by said company, and do hereby agree to keep and save harmless the party of the first part forever therefrom.

The party of the first part hereby covenants and agrees that he has made no such debts not now known to the party of the second part, on account of which said firm may be charged.

That the consideration hereinbefore named consists of seven thousand ($7,000) cash down, and the balance in two notes for the sum of eight thousand ($8,000) dollars, each signed by the party of the second part, and the collection thereof at their maturity guaranteed before their maturity by Calvin Knowlton and Lewis E. Dillman.

The first of said notes to become due July 1, 1884, and the second to come due July 1, 1885, and each to bear annual interest at six per cent. per annum, the cash payment of seven thousand dollars to be paid as follows: Two thousand dollars at the date thereof, and the remainder within ten days from this date.

Witness our hands and seals, the day and year first above written.

Witnesses:

| | |
|---|---|
| THOS. H. HUTCHINS, | [SEAL.] |
| GEO. S. HOUSE, | [SEAL.] |
| JOHN N. NADELHOFFER, | [SEAL.] |
| EDWARD R. KNOWLTON, | [SEAL.] |
| ANDREW DILLMAN. | [SEAL.]" |

The bill sets up certain statements and representations on the part of appellee as grounds of fraud in the procuring of the contract. In substance, in the year 1882, appellee represented that he was the owner of letters patent from the United States, being No. 201,889, issued to him for certain improvements in barbed wire fence, and had made application to have certain letters patent of like kind issued to him, all of great value. That they were valid and the invention therein described new, useful, and had not been issued before, and could be used without being an infringement of those controlled by Washburn & Moen Manufacturing Co. and Elwood or their licensees, and relying upon the representations appellant went into partnership with Nadelhoffer under the firm name of John W. Nadelhoffer & Co., for manufacture and sale of barbed fence wire,

and sets out the terms of the partnership agreement. They proceeded in business under the agreement until, some time in February, 1883, in violation of his agreement, appellee refused to continue the partnership, having received the patent No. 270,098 January 2, 1883, threatened to sell the patents and endeavored to do so. On account of his circumstances and investments in the barbed wire business appellant would suffer great loss if the patents were sold to other parties and unless the business should continue. That said Nadelhoffer represented that the two patents were valid, and represented that he had been already offered upward of $25,000 in cash for the said two letters patent and threatened to accept that sum and transfer and assign the patents, unless he should be able to make sale of them to appellant, and appellant, relying on such representations, and for the purpose of avoiding loss, purchased them as aforesaid.

That on the 18th of April, A. D. 1883, appellee, by proper deed, conveyed the said letters patent to the appellants, and his right, title and interest in said machine inventions, for which applications for letters patent had been made mentioned in the contract. The bill charges that the said two patents were the chief and almost entire consideration for said contract and assignment. That the representations of appellee were false. That each of said letters were, and now are invalid and void in this, that the inventions were not and are not new, and had been in public use more than two years prior to the application for either of them, and were a mere change of proportions and devices long before in general use. That the representations as to the appellee's being offered $25,000, etc., was false and fraudulently made, and that the representation that the patents were not an infringement of the letters patent owned and controlled by Washburn & Moen Manufacturing Co. and I. L. Elwood were also fraudulently false.

That the letters patent No. 281,120, issued to appellant as assignee of appellee, was invalid and utterly void in this, that it is not new, and has been in public use more than two years prior to the application for said letters patent, and is a mere change of devices and proportions in general use prior

to said application, and is an infringement the same as the others. That the consideration for the notes and cash paid had entirely failed. That appellee was insolvent, etc.

Messrs. HOUSE & FRY, for appellant.

Mr. C. DUNHAM, for appellee.

LACEY, J. It is sought by this bill to annul the agreement and recover the money paid, and perpetually enjoin the note last due, the other being in suit, and pleas entered claiming failure of consideration, and is not in controversy in this suit.

The ground of such relief as set up in the bill is, that the execution of the agreement, the payment of the seven thousand dollars in money and the execution of the notes in question, was procured by the fraudulent misrepresentations of the appellee.

The main and chief cause of complaint is that the appellee represented that the patents were genuine and not an infringement of other patents, and that they were new, and that he had been offered the sum of $25,000 in cash for the two patents by other parties, and by implication, at least, that the patents were worth that sum.

Was the first of these representations fraudulent in such a manner as to avoid the contract; and in considering that we must look to the contract to see what was actually sold to the appellant.

It will be observed that the deed of assignment of the letters patent and the assignment of the claim for the one applied for was only a quit claim. It was not a warranty. The only warranty was that appellee held and retained the full and complete absolute title to each of said letters patent; that is all the title that he ever held ; that he had not conveyed or incumbered it. That this warranty has failed is not contended. The agreement then expressly says that the appellee did not warrant the validity of said patents, or that they were not infringements of any other patents now existing, and the said party of the first part shall not be required to defend any.

suits now pending or hereafter to be instituted wherein the validity of the said patents are called in question, etc. So it will be seen that appellant was fully notified that he was buying the patents at his own risk—that he took his chances as to their being infringements and as to their novelty. Whether they were genuine or not was to a great degree a mere question of opinion and as to whether they were infringements or not was the same. The mere representations that the patents were genuine and novel, and not infringements, should be regarded as mere matter of opinion and are not such false representations as would avoid a contract. As to the patents being worthless, depends apparently upon the fact of their being genuine or not. If they are genuine and not infringements, there is no charge in the bill but that they were fully as valuable as claimed by appellee, or worth the amount given. Therefore there could be no failure of consideration under the agreement, there being no warranty of genuineness, unless the contract can be impeached for fraud. It remains now to be considered whether the representation by appellee that he had been offered $25,000 in cash for the patents was such as to avoid the contract on account of fraud. The material effect of such statements would be to induce the belief on the part of appellant that as others prized the patents they must be very valuable, and might induce the belief that they were genuine, as parties would not make such offers unless they so believed. But as to the value of the patents there is no dispute, in the case of their being genuine and not infringements.

That may be laid out of the question, as appellant waived any warranty. Then the other part of the implication, that parties believed that the patents were genuine, would rest on the same foundation as the representations made by the appellee directly; that the patents were genuine and not infringements is a mere matter of opinion of a party not known to have any peculiar knowledge.

It would be the folly of the appellant to use any such implication or to be influenced by such statements. Then we would conclude that such false statement would not be suffi-

cient grounds upon which to declare the contract void.  In the case of Noetling v. Charles H. Wright, 72 Ill. 390, it is held, " that statements made by a vendor of property, as to its value or the price he has been offered for it, or the good qualities of the property," etc., * * * are not such statements, if proven false, upon which an action for deceit could be maintained  *  *  *  such statements are regarded as mere *gratis dicta*, and as is well said by Kerr in his work on Frauds and Mistakes, page 84, "A man who relies on such affirmations, made by a person whose interest might so readily prompt him to invest the property with exaggerated value, does so at his peril, and must take the consequences of his own imprudence."  But this rule would not apply in case a party should state that he had been offered an exaggerated price for an article by a third party, and by collusion with that party the third party should falsely state that he had in fact made such offer when he had not in good faith done so.  " By such a conspiracy a source of information to which plaintiff had a right to resort and rely on would be corrupted, and he be prevented from obtaining correct information, so he would be morally and legally defrauded."  Keener v. Harding, 85 Ill. 264.  But such is not the case here.  No such conspiracy is alleged.  As authority bearing on the same doctrine, and sustaining it, see Schramm et al. v. Mary E. O'Conner et al., 98 Ill. 539.  We therefore conclude that no such representations were made in this case as would amount in law to fraud.  The appellant had been manufacturing the barbed wire under this patent, and was as well acquainted with its value as appellee, and such representations ought not to have deceived him.  ·

Another point in the case that would prevent the appellant from sustaining his bill is, that he should have offered to re-deed the patents to him, which he did not do.  It is claimed that the patents are worthless and not genuine; hence this offer need not be made.  We think, in good faith, it should be.  This is not a suit directly to annul the patents, and notwithstanding they are admitted by the demurrer to be infringements, yet they might have some value to appellee, and they should be returned.  They are at least *prima facie* good,

and the appellee might be able to realize. something for them if he had them.

What excuse can there be on the. part of appellant for not making the offer ? If he procures the contract to be annulled, if there can be anything realized out of the patents, appellee, and not appellant, is entitled to it. . For these reasons we think the decree should be affirmed. ·.

Decree affirmed.