### JONATHAN B. WRIGHT v. MAXWELL M. FISHER.

65 275
147 ³640

*Equity—Conveyance procured by fraud—Drunkenness as cause of incompetency—Laches.*

1. On a review of the testimony, the Court find that complainant has failed to establish the fraud charged against defendant, and the decree below is affirmed.

2. A delay of 20 years by a son, who was not a lunatic nor an imbecile, but an habitual drunkard when the means could be had to gratify his appetite, but who had sober intervals, at which times he was possessed of sufficient mind to understand his rights and move for their enforcement, in taking steps to set aside a conveyance alleged to have been executed by him when drunk to his mother, who conveyed a portion of the property to her second husband, who thereafter occupied it, shows inexcusable laches on the part of the son, and defeats his claim for relief.

3. A drunkard is not an incompetent, like an idiot, or one generally insane. He is simply incompetent upon proof that, at the time of the act, his understanding was clouded, or his reason dethroned, by actual intoxication.

Appeal from superior court of Detroit. (Chipman, J.) Argued January 12, 1887. Decided April 14, 1887.

Bill filed to set aside deed on ground of fraud in its procurement when complainant was intoxicated Complainant appeals from decree dismissing bill. Affirmed. The facts are stated in the opinion.

*Thomas Davies (C. I. Walker,* of counsel), for complainant.

*William H. Wells* (*Ashley Pond* and *Don M. Dickinson*, of counsel), for defendant.

MORSE, J. The complainant in his bill, as amended, avers, substantially, that his father died in 1850, leaving personalty and two pieces of real estate; that complainant was then seven years of age, and was soon thereafter placed under guardianship. Six months after the death of his father, the mother of complainant married the defendant. The defendant and the widow were administrators of the estate of complainant's father.

That defendant was for some years guardian over complainant, and was such guardian when he reached his majority, at which time he settled with complainant; that, a few months after complainant became of age, he was put under the guardianship of his mother as a spendthrift, on October 1, 1864; that complainant has been incapable of taking care of his property since that time; that, while so under guardianship, defendant, acting in behalf of the guardian and for himself, induced complainant to consent to the transfer of an interest in said two pieces of realty, and informed complainant that, upon such consent, the said guardian would resign, and thus enable complainant to convey said interest to her; that said guardian resigned November 14, 1865, and on November 15, 1865, while the complainant was under the influence of liquor, defendant induced him to sign a paper, which, he said, would give the mother of complainant, who had been his guardian, a life-estate in the two pieces of realty, and that he would be paid $10,000 therefor; that complainant signed the paper upon such representations, without legal advice; that the value of the property was $30,000; that complainant received $5,000 in cash, and was to receive a mortgage for $5,000; that of the $5,000 cash he returned to his mother shortly afterwards $3,500; that he never received the mortgage, never recorded it, never received any money on it, and

never discharged it; that no order of court was made authorizing the transfer.

That Emily A. Fisher, the mother of complainant, died in September, 1883; that complainant had been told before her death by her, and by defendant, that the property would revert to him at her death; that the records show that the paper signed by complainant was a deed of an absolute fee of the two pieces of real estate, and that his mother sold one piece to George H. Hammond, in 1873, for over $20,000, and one piece to defendant, July 28, 1877, for $25,000, which last piece is still in defendant's name; that complainant's mother left a will, dated October 21, 1871, probated December 11, 1883, by which all her property was left to defendant, who was named as executor, and who was charged therein with the comfortable support, care, and attendance of complainant during his life; that she left no property on her death except apparel; that defendant, by undue influence, obtained her money and property, and defeated the trust charged in the will; that defendant has paid complainant about $100 since the death of complainant's mother.

Defendant is charged with a scheme of fraud in obtaining the deed to complainant's mother from complainant, and in obtaining money and property afterwards from her. The prayer is to set aside the deeds as to piece of realty now owned by defendant.

The defendant admits many of the allegations in the bill of complaint, but denies that, while complainant was under guardianship as a spendthrift, the defendant persuaded him to consent to a transfer of an interest in the property; denies that there was any fraud in the resignation of complainant's mother as guardian, or in the procurement of the deed of the real estate to her; avers that complainant was under no disability when said deed was made, and that he knew the nature of the instrument executed; denies that he, or complainant's mother, misrepresented the purport of the paper,

or that he persuaded complainant to return any of the $5,000 in cash to his mother; avers that the mortgage for $5,000 was received by complainant, and was afterwards paid in full and discharged; denies that the property conveyed was worth $30,000 at the time of such conveyance, and denies that complainant was without legal advice; denies that complainant was ever informed by him, or by the mother, that the property would revert to complainant upon her death; denies that complainant was under the influence of liquor when he executed the deed to his mother; denies that he obtained by undue influence the money and property of complainant's mother; and denies all and every charge of fraud against him.

The bill was filed May 12, 1885, in behalf of said complainant, by James W. Romeyn, his guardian, duly appointed by the probate court of Wayne county, in the superior court for the city of Detroit, in chancery.

The testimony was principally taken before a circuit court commissioner, and by depositions.

March 18, 1886, the cause was heard upon the pleadings and proofs before Hon. J. Logan Chipman, judge of said court, and June 14, 1886, a decree was entered therein dismissing complainant's bill, with costs. From this decree complainant appeals to this Court.

The proof of the alleged fraud is confined exclusively to the testimony of the complainant and one Helen E. Spillane, a former servant in the household of the defendant.

The defense rests chiefly upon the evidence of the defendant, corroborated as to the execution of the deed by Albert H. Wilkinson, who drafted it and the other conveyance, and took the acknowledgments of the same.

We are not satisfied that the charge of fraud is made out or established by the proofs.

The complainant, by his own evidence, shows that nearly all the time since he became of age his only occupation has

been the spending, in excessive dissipation, of what money and property came into his hands from his father's estate, and what he could borrow or obtain from his mother or defendant. When he could procure no money, he would pawn his clothes to obtain drink. When he had no clothes to pawn, he would resort to larceny and forgery to obtain the means to gratify his appetites. He has been in the Detroit House of Correction several times. He was, however, a spendthrift rather than an incompetent. It is not shown anywhere that his mind was so impaired, at the time of the deeding of this property to his mother, that he was incapable of transacting business.

The ground of incompetency alleged and relied upon is that he was drunk at the time, and, while thus intoxicated, was not in a fit condition of mind to understand the nature of the business he was engaged in; and that, while thus stupefied and benumbed mentally by liquor, he was unduly persuaded to make the conveyance, and defrauded by the false representation that he was only conveying his interest while his mother lived, and that the whole property would revert to him at her death.

It is not shown or claimed that, at any time up to the present, the mind of the complainant has been so weakened that he is *non compos mentis,* except when under the influence of liquor. Indeed, the whole case of the complainant is based upon his testimony, which testimony in itself refutes any idea that his mind is so affected as to preclude responsibility for or knowledge of his acts when sober. The whole truth is that his appetite for liquor is so insatiate and uncontrollable that he would barter away all he possessed in this world, and his hope of happiness in the next, for its gratification. He is now a spendthrift when intoxicated, and is not satisfied to remain sober, and therefore needs a guardian as long as he possesses property.

But at the time the conveyance to his mother was made he

was only 22 years of age, and the question arises as to his condition then, and the knowledge of the defendant and the mother as to his habits of life, and the probable result of his and their action in thus transferring the property from the son to the mother.

It seems undisputed that, at the attaining of his majority, he settled with his guardian, the defendant, for his share of the personal estate of his father, and was paid the sum of $4,500 therefor. On the twenty-fourth of June, 1864, he was paid $1,000 in cash, and a mortgage for $3,500. He immediately plunged into dissipation, and in less than two months had squandered the whole of it.

August 30, 1864, Julius Stoll, a justice of the peace of the city of Detroit, filed a petition in the probate court for Wayne county for the appointment of a guardian over complainant, on the ground that he was a "spendthrift," and—

"Squandering his property in such a manner, by idleness, drinking, and the keeping of the company of dissolute persons, as to expose himself to the danger of want and suffering, and the county to charge or expense for his support."

On the first of October, 1864, upon this petition, his mother was appointed guardian, executed her bond as such, and entered upon the discharge of her duties.

At the time when he arrived of age, and a settlement was made with him as to the personal estate due him from his father, it does not appear that either his mother or the defendant knew that he was not competent to manage his property. But his rapid expenditure of the $4,500, and the dissipation and drunkenness developed in such expenditure, coupled with the fear that he would sell and waste the proceeds of the real estate, probably led to the proceedings instituted for the appointment of a guardian. After the appointment of the guardian, and the consequent shutting off of the means to supply his vicious propensities, the habits of complainant became much better, and he was comparatively

sober, and manifested a disposition to reform his mode of living.

June 28, 1865, he petitioned the probate court for the removal of the guardian, claiming that he was capable of managing and caring for his property. Upon the hearing of this petition, the complainant's mother, aided by the defendant, who was a witness, vigorously contested this claim, and the court found that complainant was incapable of managing the property, and refused to remove the guardian.

On the fourteenth of the following November complainant's mother filed a petition asking for her discharge as guardian, which petition was not contested, and was granted. On the same day she filed in the probate court a receipt from complainant in full of all property and moneys in her hands. On the next day the complainant executed and delivered to his mother, for a recited consideration of $10,000, a warranty deed, conveying in fee simple all the real estate of which his father died seized, to her.

From the evidence, we do not think he was intoxicated when he made this transfer, and we must also believe that he fully understood that he was conveying to her his whole title. Such is the preponderance of the testimony, and the fact that he has lived since that time in such want of money that he has pawned his clothes and committed crimes in order to obtain liquor, would seem almost conclusive that he did not think he was still possessed of the reversion of this real estate. If the conveyance had been as he now claims he supposed it was, or had he thought that the property would become his upon his mother's death absolutely, without reference to her wishes or will, he would have most likely bartered away, or attempted to have disposed of, his interest therein. And when his mother sold one parcel of the property to Hammond, in 1873, he would have been apt to have objected to the sale, or asserted in some way his title in the premises. But there is no evidence that he did so.

It is claimed by the counsel for complainant that, even if the complainant was sober, and fully knew and understood the scope and purport of his deed to his mother, yet, nevertheless, the taking of such deed by the mother was a gross fraud upon him, in which fraud the defendant was an active participant, and in fact the author of it; that, at the very lowest estimate, the property was worth at least $15,000, subject to the dower, and probably a great deal more; that his mother well knew of his unfitness to manage the money obtained from such sale to her, as did the defendant; that, knowing this, the defendant prevailed upon complainant to deed to his mother, with the intent of subsequently acquiring the whole property to himself; that both of them used the influence they naturally possessed over his mind, which was weakened and impaired by intemperance, to unduly obtain this deed, and that the deed, procured under such circumstances, will be considered in equity fraudulent and void, and this without any evidence of actual fraud. We are inclined to believe that the amount paid by the mother to the complainant was not much, if any, below the actual value of his interest in the property at the time he transferred it to her.

We do not deem it necessary to discuss the question whether, under the circumstances, her action in buying the property, when she had reason to believe that he would squander the proceeds of such sale in dissipation and drink, was or was not a legal fraud upon complainant which a court of equity ought to redress. Nor shall we determine the effect in that regard of the conduct of the defendant in bringing about this sale, or his action thereafter in obtaining the property from the mother. We are not disposed, however, to find that complainant's mother intended any actual or legal fraud upon him, and doubt not that she acted throughout in the full belief that she was doing the very best she could for her son. We are are not so certain in relation to the defendant. It

may be that he has acted mainly for his own interest. But, without any actual fraud perpetrated upon complainant by either his mother or the defendant, we cannot grant him relief for a legal fraud because of his own laches.

As before said, he cannot be considered as an infant or an incompetent all these years. This conveyance was made in 1865. While his mother lived, and her evidence was available, he does not move in any way to redress the fraud, or assert his rights in the property. This delay cannot be excused upon the ground that he supposed he only conveyed to her a life-estate. It is evident he knew that he had absolutely parted with his title. He may have expected that he would heir his mother's estate, but there is no warrant in the circumstances for the claim that he supposed that her title died with her, and the real estate became his by reversion. It is disputed by his own conduct, as well as the proofs, as heretofore shown.

He slumbered on his rights for 20 years, during which time the defendant was making valuable improvements upon the premises in the belief that the title was secure. During all this time defendant was furnishing complainant more or less of money and clothes. Complainant always had a room and a home, if he wished it, in defendant's house. Yet the complainant made at no time in the 20 years any claim upon his mother or the defendant, or intimated that he had any title or reversionary interest in any of the real estate. Such laches would defeat the claim of complainant, if he were in the possession of a sound mind and laboring under no disability during these years.

But it is said that, if he was incompetent to manage his affairs, the delay is excused, and will not bar him of redress. But, in our opinion, the incompetency which in this case will exonerate the complainant from the consequences of his own laches, must be an incapacity of mind preventing him from realizing the nature and consequences of the fraud upon

him, or an incapacity of action precluding him from taking the necessary steps to right the wrong inflicted upon him. The mere fact that he loved liquor so well that he would spend all the money he could get hold of to gratify his appetite is not sufficient. If so, then the fact that he was so given to any other passion or appetite that he would squander all his means in pandering to it would also excuse delay.

We find no good reason in the proofs for the neglect of the complainant to assert his rights, if he had any, in this real estate. It is not shown or claimed that he was or is a lunatic, or an imbecile, but he is an habitual drunkard when the means are at hand to obtain drink, and, when under the influence of liquor, he is a spendthrift. He had plenty of sober intervals, and at such times he was possessed of sufficient mind to understand his rights, and to move for their enforcement. If he had the capacity, as he did, to commit forgery and larceny in order to obtain money, it would seem that he was possessed of sufficient intellect to apply to some one to right the wrong and fraud claimed to have been practiced upon him by his mother and the defendant.

A drunkard is not an incompent, like an idiot, or one generally insane. He is simply incompetent upon proof that, at the time of the act, his understanding was clouded, or his reason dethroned, by actual intoxication. *Peck v. Cary*, 27 N. Y. 9; *Gardner v. Gardner*, 22 Wend. 526; *Van Wyck v. Brasher*, 81 N. Y. 260[1].

The burden of proof of the fraud is upon him. As before said, we are not satisfied but that he received from his mother a full and adequate compensation for his property. One thing is certain, he has squandered all he received from her, or any one else. It is also certain that he did not interfere for 20 years with her absolute claim of ownership to the real estate of which his father died seized, or protest in any man-

---

[1] See, as to ratification of contract made by drunken person, *Carpenter v. Rodgers*, 61 Mich. 384.

ner against such claim, even when he knew that she was conveying the absolute title to third persons. Under these circumstances, we are loth to find fraud, and, if we could, his inexcusable laches would defeat his claim for relief.

The decree of the court below is therefore affirmed, with costs.

The other Justices concurred