BEHRNS v. QUALMAN.

CANCELLATION OF INSTRUMENTS — DEEDS — INCOMPETENCE OF GRANTOR — EVIDENCE — SUFFICIENCY.
On a bill to set aside a deed, evidence examined, and *held,* not to establish by a preponderance that at the time the deed was made the grantor was mentally incompetent to make it.

Appeal from Macomb; Tucker, J. Submitted January 24, 1907. (Docket No. 101.) Decided March 26, 1907.

Bill by Henry Behrns, an incompetent, by Charles Scheer, guardian, against Charles Qualman and Augusta Qualman to set aside a deed. From a decree dismissing the bill, complainant appeals. Affirmed.

*Franz C. Kuhn* and *Robert F. Eldredge,* for complainant.

*John A. Weeks,* for defendants.

MOORE, J. The questions involved are so clearly stated in a written opinion filed by the trial judge that we insert it here:

"The bill in this case was filed December 23, 1902, to set aside a deed given by Henry Behrns to Charles Qualman, the defendant, on the 4th day of January, 1902.

"This deed purported to convey to the defendant about 60 acres of land in section 20 of the township of Warren, Macomb county, Mich. The consideration expressed in the deed is $6,000.

"This consideration was paid by mortgage of $3,500 on the land in question, $2,000 in cash alleged to have been deposited to the credit of complainant at his request in the City Savings Bank of Detroit on or about January 5, 1902, and a note for $500 given by defendant to his son William Qualman, at the request of complainant, for the purpose of repaying William Qualman for services performed and to be performed by him for complainant.

" Complainant claims that he was by the excessive use of alcohol mentally incompetent to execute the deed in question at the time it was executed, that the consideration paid was entirely inadequate, and that he was unduly influenced by defendant to execute the deed.

" The complainant is a man some 53 years of age. He had two daughters. His wife had died on August 30, 1901. His daughters remained with him and looked after his house for a time after the death of their mother, when, owing to some differences between them and their father, both left home to work out, leaving complainant to his own resources. He and the defendants had been friends for some time, and complainant secured defendant's son William to come to his house and look after it and work on the farm.

" Complainant had for many years been addicted to the use of intoxicating liquors. He had also been a hard working, industrious man, and had accumulated quite a little property. He was always considered a fairly good business manager and entirely competent to manage his own affairs. After the death of his wife, he kept liquor and beer in large quantities in the home, and used it to such excess that there were undoubtedly many times when he was utterly unfit for business, and he finally became such a physical wreck and so generally demoralized that he concluded to sell out his farm and personalty and live at some other place than on his farm. The evidence shows that this intention was formed with some deliberation, and steps to carry it out were intelligently taken. His motives were easily understood and were not unreasonable. Some negotiations were had between him and the defendant, and it was finally agreed that defendant was to purchase the farm for $6,000; that defendant's son William was to remain some little time longer with complainant and look after the place, and was to receive as compensation $500, for which amount defendant was to give William Qualman his note, and was to receive credit on $6,000 to be paid complainant for that amount.

" Defendant seems to have had some doubt of complainant's mental soundness, and secured witnesses for the transaction with a view of establishing the fact that he was competent. On January 4, 1902, the parties met at complainant's house, and the deed from Behrns to Qualman was executed. A note from Qualman, Sr., to William Qualman, his son, executed, which was to apply on the

purchase price of the farm and pay for whatever services had been and were to be rendered by William Qualman for the complainant. A mortgage covering the farm was executed by Qualman and wife to complainant for $3,500, and the sum of $2,000 in cash was delivered to complainant by defendant and redelivered to defendant to be deposited by him to complainant's credit in the City Savings Bank of Detroit. This made up the entire consideration.

" Was complainant mentally competent to execute this deed? There are four things of which I feel convinced. The consideration paid, viz. : $6,000, was entirely adequate and all the farm can be said to be reasonably worth. There was no undue influence, nor fair evidence of fraud, that I can see. The deposit to complainant's credit in the City Savings Bank was at complainant's request, and was made in good faith, and, if any loss resulted, it must be complainant's loss. Complainant was usually, up to the time of the execution of this deed, fairly competent mentally to do, and did as a matter of fact, transact his usual business. He knew and realized that his wife had died, that his children were dissatisfied and would not live with him, and that it would be better for him to sell out, and he insisted on a fair price for the place. There were certainly many times subsequent to his wife's death, and perhaps before, when complainant was at least temporarily utterly incompetent to transact business of any kind. One of which times was January 3d, the day before this deed was executed.

" Was he competent on the 4th? He was certainly much weakened physically and mentally by his continued excessive use of alcohol. The evidence is conclusive that on the 3d, the day before this deed was executed, complainant was utterly incompetent to do business of any kind. Several reputable witnesses testify that on the 4th, when this deed was executed, he was entirely competent, appeared to fully understand the details of the transaction, and in fact dictated all the terms himself. There were certainly some circumstances which might be assumed to throw suspicion upon his competency. He arranged to pay William Qualman, the boy who took care of the house for him, what seems rather an exorbitant sum considering what service he had rendered. There were large sums of money received by him for which no one seems able to account. He was certainly a physical wreck at the time this business was done.

" The rule laid down by the Supreme Court, in the case of *Williams* v. *Williams*, 133 Mich. 21, seems to be that, no matter how addicted to the excessive use of liquor a man may have become, or how much he may be weakened generally speaking, mentally or physically, or both, by his excesses, if, at the particular time of a disputed transaction, he appears to reputable witnesses, who may have seen him but a few times sober, in the full possession of his faculties, and to know what he desires and intends to do, he is to be held competent to transact the business then in hand.

" Using that standard, I feel constrained to hold that, at the time this deed was executed, viz., the afternoon of January 4, 1902, the complainant, Henry Behrns, was mentally competent to transact business and to execute the deed in question."

A decree was made in accordance with the opinion, and the case is brought here by appeal.

The following appears in the record:

" The testimony of this witness, as well as other witnesses of the complainant, tended to show that the consideration agreed to be paid by the defendants for the deed was inadequate and much below the real value of the land. Defendants offer testimony contradicting this, and, as it is not the claim of counsel for complainant that the weight of such testimony in favor of such inadequacy is sufficient to justify them in asking the Supreme Court to reverse the decree entered in the circuit court, on the ground of such inadequacy of consideration, none of the testimony touching that point is set forth herein."

This, of course, eliminates the question of inadequacy of consideration.

Was the complainant incompetent to make the deed? The solicitors for the complainant concede the burden is upon their client (see *Gibbons* v. *Dunn*, 46 Mich. 146), but insist he has met it, and that the trial judge would have so found had he not labored under a misconception of the decision of this court in *Williams* v. *Williams*, 133 Mich. 21. It must be conceded that the testimony is very conflicting. Some of it offered on each side is from interested witnesses. Some of it, given by witnesses who

have no apparent interest, is contradictory and irreconcilable. The testimony of the family doctor, who was also a witness to the deed, and of the notary who drew the deed, is to the effect that Mr. Behrns understood perfectly what he was doing, and was competent to do it. Counsel, however, say that this testimony is in conflict with that of other witnesses. We quote:

" It is true that Dr. Flynn and the scrivener Harwood are not interested financially, but they are professionally, since, having witnessed and approved of the transaction, they would stultify themselves to now admit the plain incompetency of Behrns. The real key to their testimony lies in the phrase that each uses: 'If I had thought he wasn't (competent), I should not have executed them.' And: 'If I had thought he wasn't, I would not have witnessed the deed.' Having put themselves where they had, they felt that they must stand by their guns."

The trial judge evidently knew these men, and refers to them as reputable witnesses. Is it not more likely that, as testified by them, the one would not have drawn the deed, and the other would not have been a witness to it, if they had thought the grantor was incompetent, than that they now commit perjury? There are some facts appearing in the record which we think have great significance. The deed was made on the 4th of January. $2,-000 was paid over at that time, and at the request of the complainant was deposited in a bank in his name. A bank book was issued to and delivered to him. At least a month before the sale was made, complainant stated to witnesses that he intended to sell the farm. Ten days after the land was sold, complainant had an auction of his personal effects. A brother-in-law, one of the most important witnesses for complainant to establish his incompetency all through the month of January, was at the auction sale, and did not hesitate to purchase from him a horse and buggy for $182. The man who was later appointed guardian was present at the auction sale. On the 17th of January, and again on the 22d of the same month, the complainant told the cashier of the bank at Warren that

he had sold his farm because the girls had left him; that he had sold it for $6,000, and thought it best to do so. After the bank failed, complainant told one of the witnesses he had lost $2,150 in the Detroit City Savings Bank. The defendant Qualman testified that complainant got a letter from the receiver and turned in his bank book. One of the solicitors for the complainant produced the bank book at the trial, and stated he got it from the Union Trust Company. Under date of January 7th, there was entered to complainant's credit $2,000. A check was also made out by the Union Trust Company under date of November 18, 1902, payable to the order of Henry Behrns, for $430.15, as dividend No. 1 on payee's claim against the savings department of the City Savings Bank.

As already appears, this case was commenced December 23, 1902. Cases having more or less bearing upon the effect of intoxication upon the act of executing papers are *Pierce* v. *Pierce*, 38 Mich. 412; *Carpenter* v. *Rodgers*, 61 Mich. 384; *Wright* v. *Fisher*, 65 Mich. 275. See, also, 17 Am. & Eng. Enc. Law (2d Ed.), p. 401. We do not think it is established by a preponderance of the evidence that at the time the deed was made the grantor was incompetent to make it.

The decree is affirmed, with costs.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.