CASE 78.—ACTION BY NAT MATTHIS AGAINST VIRGIL F. O'BRIEN.—March 18, 1910.

# Matthis v. O'Brien

Appeal from Hardin Circuit Court.

W. S. CHELF, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1. Contracts—Rescission—Inadequacy of Price as Ground.— Where parties are competent, and no unfair or fraudulent advantage is taken of one who, with his eye open, understandingly and freely makes a bad bargain, mere inadequacy of price will not authorize rescission.

2. Descent and Distribution—Sale of Interest by Heir—Rescission—Unconscionable Bargain.—Defendant, who bought for $500 plaintiff's interest in an estate worth $1,800.00 knowing its approximate value, did not bring about the conference at which he bargained therefor, but he quickly availed himself, when they met, of the opportunity afforded by plaintiff's condition, knowing he was drinking, and had no money, and his inclination and habit of selling or trading anything he had to get more whisky, and took him in a drunken or half-drunken condition to the place where the deal was closed early on the following day, paid his railroad and hotel expenses, and lawyers preparing the papers. Held that, though plaintiff then appeared sober and apparently understood the nature of the transaction and that his interest was worth largely more than was paid, defendant took an unconscionable advantage of him, and obtained his interest for a grossly inadequate consideration, and should be required to restore what he received less the $500.

3. Contracts—Rescission—Person Partly Under Influence of Liquor.—A person of known intemperate habits and a disposition to sell or trade anything he has to get more whisky when drinking, need not be wholly under the influence of liquor to avoid a contract made under circumstances indicating undue

advantage was taken of him, but it is sufficient if his weakness and necessities are taken advantage of, and a contract obtained that no man in his sound and sober senses would have made.

L. A. FAUREST and R. L. STITH for appellant.

WILLIAMS & HANDLEY and IRWIN & IRWIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL —Reversing.

The appellant, an unmarried man, brought this action to cancel a conveyance and contract alleged to have been fraudulently procured by the appellee while he, the appellant, was under the influence of intoxicating liquors to such an extent that he was not capable of transacting business. It was further alleged that the property obtained under the conveyance and contract was secured by fraud and overreaching at a grossly inadequate price. The facts are substantially these: The appellant, who is of mature years, was greatly addicted to the habit of becoming intoxicated. When not under the influence of liquor he was an industrious, deserving, intelligent man and a good carpenter; but his thirst for liquor was so great that when once he took a drink he seemed to lose all control of his mental as well as moral faculties, could be easily persuaded to do almost anything, had no idea of the value of money, and no capacity to attend to business. He would sell or pawn his clothing or carpenter tools or anything that he had at any price for the purpose of getting whisky. The evidence of his unfortunate habits in this respect is conclusive.

The appellee is the nephew of the appellant, and knew his habits as well as his willingness to sacrifice

anything he had for whisky when once he commenced to drink.

On the 6th of January, 1907, John S. Matthis a brother of appellant and an uncle of appellee, died intestate in Hodgenville, Ky., leaving surviving him as his only heirs five brothers and sisters, including the appellant. One of the sisters was Mrs. O'Brien, the mother of appellee, with whom he made his home and at whose house he died. A short while before his death he conveyed to Mrs. O'Brien property in Hodgenville worth $5,000 or $6,000, and she qualified as administratrix of his estate, that amounted, excluding the property conveyed to her, to $7,133.33. After deducting the debts and expenses of administration, the sum left for distribution among the heirs, excluding the property conveyed to Mrs. O'Brien, was $5,900, or $1,180 each. After his death, and when appellee bought the interest of appellant, the other heirs talked of bringing a suit against Mrs. O'Brien to set aside the conveyances to her upon the ground that at the time they were made John S. Matthis was incapable of contracting. On January 21, 1907, the appellant, whose home was in Elizabethtown, telephoned to appellee, who lived in Hodgenville, to come to Elizabethtown, as he wanted to see him. In response to this message, appellee on the day he received it went to Elizabethtown. When he arrived there, he met the appellant, who was then under the influence of liquor, as appellee knew, and he also knew that after his arrival appellant took several other drinks. The evidence that appellant was drinking heavily on this day is shown by the testimony of many witnesses. Some of these witnesses knew that appellant had an interest in his brother's estate, and, being apprehensive that in his

condition he would dispose of it, they advised him that day not to do so, and endeavored to persuade him to place his money in the hands of a trust company for safe-keeping, which he promised to do.

Appellee testifies that appellant told him that he needed some money to buy a tract of land and had to have it at once; if he did not, he could not get it; and that he wanted to sell him his interest in John S. Matthis' estate. That he (appellee) advised him not to do that, but appellant said he was going to sell it, and if he did not buy it some one else would. That he "advised him several times to keep it and not to sell it. I then afterwards asked him what he wanted for it, and he said $500. I told him that he had better not do it, that he might get more than that. He said that was all he wanted. The balance he said he wanted my mother and me to have. That he had always lived without it and could do it yet. I told him to study over it and be sure he was right, and in a little while he approached me again and asked me what I was going to do about it, that I must tell him, and I told him I couldn't give him an answer then, that I would go on home and he could come over and see about it. He says, 'No, I'll just go home with you.' I told him, 'No, you study about this thoroughly before you come.' He says: 'I have got my mind made up, and I am going to sell, as this place I want must be bought within a certain length of time.' He then asked me who would be a good lawyer in case we traded, and, as Mr. Mather was there that afternoon, I said to him, 'there is as good a man as you can get.' " Appellant, in company with appellee, who paid his railroad fare, went to Hodgenville that night, where he put up at a hotel, and the proprietor testifies that when he came

there he was drinking, but appeared to be sober the next morning. Appellant's version of what took place in Elizabethtown is that the appellee said he would give him $500 for his interest, and that would be more than any of them would get. That appellee paid his way to Hodgenville, also paid his board at the hotel while he was there, and the next morning gave him two or three drinks of whisky, but appellee denies that he gave him any whisky.

At Hodgenville early the next morning the contract and conveyance were prepared for appellant by Mr. Mather, an attorney, in the presence of appellee, and Williams & Handley, his attorneys. The evidence shows very clearly that at the time the papers were prepared appellant appeared to be sober and apparently fully understood the nature of the transaction, although appellant testifies that he was nervous and anxious to get possession of some money. It is evident from the testimony concerning appellant's disposition and character when drinking that he would at this time have sold his interest for a hundred dollars in order to get money if he could not get for it $500, and the fact that he knew his interest was worth largely more than $500 strongly corroborates this conclusion. Shortly after the papers were executed, the appellant left for Elizabethtown, taking with him a part of the $500 that was paid, having deposited the remainder in a bank at Hodgenville. Upon his arrival in Elizabethtown on the same day, he proceeded to get very drunk, and in company with some other parties was arrested. A few months after the death of John S. Matthis, a settlement and distribution of his estate was made, and appellee received as purchaser of the interest of appellant $1,800; the other heirs receiving substantially the same. It will be observed that

the amount paid the heirs was more than their share
in the personal estate left by the decedent; the dif-
ference being made up by Mrs. O'Brien presumably
for the purpose of preventing litigation to set aside
the conveyance made to her. It will also be noticed
that for $500 appellant sold his interest in his broth-
er's estate that was worth $1,800, and that appellee
by the investment of $500 on January 22, 1907, re-
ceived on April 10, 1907, as assignee of appellant,
the sum of $1,800—a profit of $1,300 in less than
three months.

Considering the fact that the mother of appellee
was the administratrix, and that she lived in the same
little town appellee did, it is manifest that appellee
knew the approximate, if not the exact, value of his
uncle's estate at the time he purchased the interest
of appellant. We have, then, this condition of af-
fairs: . Although appellee did not invite or bring
about the conference in Elizabethtown that resulted
in the contracts being made, it is yet true that, when
he went to Elizabethtown and saw the appellant, he
quickly availed himself of the opportunity his con-
dition afforded to make a most advantageous and
unfair bargain. He knew when he met the appellant
that he was drinking. He knew his inclination and
habit of selling or trading anything he had when
drinking for the purpose of getting money to buy
more whisky. He knew that at this time he had no
money. He took him in a drunken or half-drunken
condition with him to Hodgenville, paid his rail-
road fare, his hotel bill in Hodgenville, and the
three lawyers who assisted in preparing the papers
by which the appellant parted with his interest in the
estate. Appellee may not have thought of buying
appellant's interest when he went to Elizabethtown,

Matthis v. O'Brien.

and we may assume that he would not have offered to buy it; but, when he saw the profit to be made in the transaction, his desire to make so good a trade overcame whatever scruples he may have had, and his good intentions gave way before the prospect of gain. Under these circumstances, our conclusion is that appellee took an unconscionable advantage of the appellant and obtained for a grossly inadequate consideration his interest in the estate of his brother. Where the parties are competent to contract, and no unfair or fraudulent advantage is taken, mere inadequacy of price will not authorize the rescission of the contract. The law will not interfere with the right of competent parties to contract as they please, or set its disapproval on the wideawake, vigilant, and enterprising citizen who makes a good bargain. Nor will it come to the relief of those who with their eyes open understandingly and freely make a bad bargain. In almost every business transaction, each party is striving to strike the best trade he can; and to encourage and stimulate traffic and industry, and give due recognition to the independence of the individual, the utmost liberty and freedom in business matters should be and is allowed. But, obviously to inspire and promote justice and fair dealing between man and man, there must be a place at which the courts in good conscience will interfere to protect the weak from the strong and lend aid to those whose conditions and necessities have been taken advantage of. Otherwise the unscrupulous and avaricious would prey and thrive at will upon the needs and misfortunes of the helpless, dependent, and simple-minded.

We think the facts of this case fully justify us in holding that these contracts should be set aside. This

vol. 137—42

conclusion does not in any manner reflect upon the professional or personal integrity or good faith of the attorneys who assisted in preparing the papers. They were not in any way parties to the scheme by which appellee sought to and did take undue advantage of appellant. They merely discharged in the usual way professional duties that they were called upon to perform.

We do not put our decision that appellee must restore what he received from the estate, less what he paid, upon the ground that appellant was so drunk at the time the contracts were executed as not to understand their nature and contents. It is not necessary that a person of appellant's known habits and disposition should be wholly under the influence of liquor to enable him to avoid a contract made under circumstances such as we have described. It will be sufficient if his weakness and necessities are taken advantage of as in this case, and a contract obtained that no man in his sound and sober senses would have entered into. Hough v. Hunt, 2 Ohio 495, 15 Am. Dec. 569; Crane v. Conklin, 1 N. J. Eq. 346, 22 Am. Dec. 519; Page on Contracts, section 905; editorial note to Wright v. Waller, 54 L. R. A. 440.

Wherefore the judgment is reversed, with directions to enter a judgment cancelling the contract and conveyance and for other proceedings consistent with this opinion.