## Glenn, et al. v. Martin.

(Decided February 15, 1918.)

### Appeal from Mason Circuit Court.

1. Contracts—Physical or Mental Condition of Party—Drunkenness.— A person who is habitually intoxicated is not ipso facto incompetent to make a contract. In the absence of an inquisition finding him to be an habitual drunkard, his contracts cannot be avoided

unless it appears that he was incapable of understanding the transaction in which he was engaged.

2. Contracts—Physical or Mental Condition of Party—Drunkenness.— The general rule is that the intoxication of a person which will invalidate his contract must be such as to render him incapable of understanding what he is doing, or to deprive him of the powers of reasoning and understanding to such an extent that he fails entirely to comprehend the consequences of his acts.

CHARLES L. DALY and WORTHINGTON, COCHRAN & BROWNING for appellants.

ALLEN D. COLE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

By his ten promissory notes executed on November 14, 1903, Edward Glenn agreed and promised to pay to the Union Trust Company, of Maysville, or bearer, on or before five years from that date, the aggregate sum of $1,000.00 with interest thereon, payable semi-annually. Simultaneously with the execution of the notes and to secure their payment, Edward Glenn and Catherine Glenn, his wife, executed a mortgage upon their residence in Maysville. The $1,000.00 was furnished by the appellee, Mrs. Henrietta Martin, and she received the notes and mortgage.

Before the first gale of interest fell due, and while in St. Louis on a visit, Edward Glenn died on Feb. 13, 1904, either from injuries received in an accident, or from an attack by footpads. Edward Glenn was a saloon-keeper in Maysville.

Catherine Glenn, or her representative, paid all the terest coupons attached to the notes except the last ones which, with the principal of the notes, became due November 14, 1908.

On August 24, 1910, Mrs. Martin brought this action against Catherine Glenn and her children to enforce the mortgage. The defense is that the notes were procured by fraud practiced upon Edward Glenn who, it is claimed, was an inebriate and did not understand the effect of his contract; and further, that he did not receive the money for which the notes were given. It is admitted, however, that at least $447.55 of the $1,000.00 called for by the notes was used to discharge a mortgage upon the Glenn residence and held by a local building and loan association.

The rule of law applicable to such cases is thoroughly established. It is not every case of drunkenness that will defeat a contract executed by an intoxicated man. A completely intoxicated person . is generally placed upon the same footing as persons of unsound mind, since one deprived of reason and understanding by drunkenness is, for the time, as unable to consent to the terms of a contract as a person who lacks mental capacity by reason of insanity or idiocy. There is, however, a marked distinction between the cases of complete intoxication and cases of partial intoxication. A person who at the time of making a contract is completely intoxicated may avoid the contract notwithstanding the fact that his intoxicated condition may have been caused by his voluntary act and not by the contrivance of a party to the contract.   6 R. C. L. 596; Wright v. Waller, 127 Ala. 557, 54 L. R. A. 440, and note.

But, to permit a person only partially intoxicated to avoid his contract would enable one to make drunkenness a cloak for fraud, since a party may be partially intoxicated without being completely incapacitated to contract; and this fact has impelled the courts to define the degree of intoxication which will be a ground for avoiding a contract. The degree of intoxication necessary to avoid a contract has been variously stated by the courts; but there is little difference in their conclusions.

The rule is stated in 6 R. C. L. 597 as follows:

"The rule generally recognized at the present time is that the intoxication of a party which will invalidate a contract entered into by him must be such as to render him incapable of knowing what he is doing, or to deprive him of the powers of reasoning and understanding to such an extent that he fails entirely to comprehend the consequences of his acts. In order to set aside a contract on the ground of drunkenness it is not sufficient that the party was under undue excitement from the use of liquor. It must have been used to that degree which may be  called excessive, where the party is utterly deprived of his reason and understanding."

In the same work, on page 598, the following rule is declared to be applicable in cases of habitual drunkenness, such as the appellants claim was the case of Edward Glenn:

"A person who is habitually intoxicated is not *ipso facto* incompetent to make a contract. In the absence

of an inquisition finding him to be a habitual drunkard, his contracts cannot be avoided unless it appears that he was incapable of understanding the transaction in which he was engaged. In other words, a drunkard is not an incompetent, like an idiot, or one generally insane. His incompetency can only be established by showing that at the time of the act in question his understanding was clouded, or his reason dethroned, by actual intoxication."

But, an habitual drunkard is not necessarily an incompetent person. Van Wyck v. Brashear, 81 N. Y. 260; Wright v. Fisher, 65 Mich. 275; Ralson v. Turpin, 25 Fed. Rep. 18, 8 Am. St. Rep. 886. Experience shows that a man may be very much intoxicated and still be shrewd, hard in driving a bargain, and in every way competent to manage his own business. See Schramm v. O'Connor, 98 Ill. 539.

In Wright v. Fisher, 65 Mich. 275, 8 Am. St. Rep. 893, it is said:

"A drunkard is not an incompetent, like an idiot, or one generally insane. He is simply incompetent upon proof that, at the time of the act, his understanding was clouded, or his reason dethroned, by actual intoxication; Peck v. Cary, 27 N. Y. 9, 84 Am. Dec. 220; Gardner v. Gardner, 22 Wis. 526, 34 Am. Dec. 340; Van Wyck v. Brashear, 81 N. Y. 260. The burden of proof of the fraud is upon him." Or, as has aptly been said, "some inebriates have their paroxysms of inebriety."

The rule is summarized in Bispham's Equity, sec. 230, as follows:

"If a man is so far drunk that he is substantially *non compos mentis,* his contract will be invalid; but if there is intoxication, not so great in extent, equity will not interfere. It will, however, in cases of partial drunkenness, lay hold of any circumstances tending to show actual imposition, and make out a case of actual fraud, especially if the drunkenness has been brought about by the contrivance of the other party to the transaction."

Matthis v. O'Brien, 137 Ky. 651, comes within the last named class where an advantage was taken of Matthis' weakness and necessities to obtain an unconscionable contract, which the court rescinded. And, Herzog v. Gipson, 170 Ky. 325, is to the same effect. Neither case is applicable here since there is no claim that Mrs. Mar-

tin obtained something of great value for a small consideration.

See also Pomeroy's Eq. Jur., sec. 949; Kuhlman v, Wieben, 129 Iowa 188, 2 L. R. A. (N. S.) 666; Miller v. Sterringer, 66 W. Va. 169, 25 L. R. A. (N. S.) 596; Matz v. Martinson, 127 Minn. 202, L. R. A. 1915B, 1121; Power v. King, 18 N. Dak. 600, 21 Am. & Eng. Ann. Cas. 1108, and notes to each case.

Bearing this rule of law in mind we will briefly state the facts to which the rule must be applied. There is no proof that Edward Glenn was drunk when he executed the notes and mortgage; on the contrary the testimony is that he was not drunk on that occasion.

The substance of the proof as to Edward Glenn's incapacity from inebriety and other causes is that about two years before his death he was quite ill from an attack of malarial typhoid fever; that thereafter he did not manifest his former mental or physical force; that about that time he began to drink heavily, and neglected his business to such an extent that he was unable to pay his saloon license fee and had to quit business for that reason perhaps a year before the notes and mortgages were executed. W. W. Ball, the cashier of the Union Trust Company, represented his company in making the loan, and R. H. Newell represented Mrs. Martin. Both testified to the regularity and fairness of the transaction; that Edward Glenn was entirely competent to transact business; and that he received the $1,000.00 called for by the notes either in money or by the application of a part of it to the payment of the lien of the building and loan association. They are not contradicted.

A good deal of testimony has been taken to the effect that Edward Glenn became an habitual hard drinker perhaps two years before he executed the notes and mortgage in question, and that his business went gradually from bad to worse, ending in his losing it. But in the absence of proof that his drinking rendered him incompetent, the conclusion to be drawn from this proof is that his bad habits compelled him to borrow money rather than that Ball or Newell took advantage of his habits or condition by pretending to lend him money which was not actually loaned. The substance of the argument is that it having been shown that Edward Glenn was a heavy drinker, and no disposition of the surplus money received

from the mortgage having been shown, the law will place the burden upon Mrs. Martin to show the entire good faith of the transaction, and, that this she has failed to do. We cannot, however, agree with either of these propositions.

These facts, at most, raised a mere suspicion, and cannot prevail against the positive testimony of Ball and Newell. That Mrs. Martin furnished $1,000.00 to Newell to be loaned to Glenn is not questioned; her good faith is in no respect doubted except through the acts of Newell, her agent. Edward Glenn never questioned the transaction or denied his full liability, and after his death no defense was claimed for five years, and until after this action was brought to collect the debt.

Mrs. Glenn knew as much in 1903 about her husband's drinking habits as she did in 1910 when she made this defense; nevertheless she paid the interest upon the debt for years without question or objection.

The weight of the evidence supports the finding of the chancellor; but if we should have any doubt upon that subject we would feel compelled to affirm the judgment under the well established rule that where the proof is contradictory and the mind is in doubt, the finding of facts by the chancellor will not be disturbed.

We have not considered the question of ratification urged upon us by appellee's counsel for the reason that in view of the conclusion reached upon the principal question it is unnecessary to a decision of this appeal.

Judgment affirmed.