### MANSFIELD *v.* WATSON.

Fraud must be proved, and will not be presumed.

Fraud is of various kinds, but generally consists either in the misrepresentation or concealment of a material fact.

The party alleging fraud, should also make it appear that he relied or acted upon the representation made, and that he was vigilant, and not careless, in making the contract.

The surrendering of a note, or the compromise of a suit, is a sufficient consideration for a bond.

In law, the acts of the drunkard are avoided on the ground of incompetency; in equity, on that of fraud.

As mere moderate drunkenness does not deprive the mind of the power of rational consent, and is not always apparent to others; it does not, of itself, avoid a contract.

In order to avoid a deed or contract, there must be that state of excessive drunkenness which deprives the person of the consciousness of what he is doing; and this excessive drunkenness is a defence, whether voluntary, or caused by the fraud or procurement of the other party to the contract.

But there may be such contrivance or management on the part of one party, to draw the other into drink, and thus to take advantage of his intoxication, as would justify the interposition of a court of equity, on the ground of fraud, even where the drunkenness is less than excessive.

In either case, such intoxication only renders the contract voidable, and not void; and the party, on recovering his understanding, may adopt the same.

*Appeal from the Lucas District Court.*

THIS is a proceeding in equity to enforce the specific performance of a contract, for the conveyance of a certain eighty acres of land in Lucas county. The contract is under seal, dated February 22, 1850, and binds the respondent to convey the land, so soon as he obtains his patent. The answer of respondent is not very clear in its averments, but the substance of it is, that in the fall of 1849, the complainant professed to have a claim title to certain lands; that he sold the same, or a part thereof, to respondent; that respondent, after entering the same, was to convey the eighty acres in dispute to complainant; that as security for such conveyance, he gave complainant his note for two hundred dollars; that said contract, however, was without consideration; was obtained by fraud and duress; that complainant had no claim on the land, and misrepresented his title. He also avers that the contract of February 22, 1850, was obtained by fraud and misrepresentation, and without consideration, being given to satisfy this note, obtained as above stated. The answer was filed June 21st, 1853, and afterwards, on the 6th of October, 1854, he filed a further answer, setting up that, at the time of executing the last contract, he was drunk, and so under the influence of liquor, that he had no contracting mind, and that this drunkenness was brought about by the contrivance of complainant, with the fraudu-

lent purpose of obtaining the execution of said contract. Replication in denial of the new matter contained in the answer. After hearing on the pleadings and depositions, the bill was dismissed, and complainant appeals.

The evidence is sufficiently stated in the opinion of the court.

*James Baker*, for the appellant.

*J. E. Neal* and *O. L. Palmer*, for the appellee.

WRIGHT, C. J.—The execution of the bond of February 22, 1850, is not denied, but is sought to be avoided, so far as now insisted upon in argument, on three grounds: *first*, that it was given without consideration; *second*, that it was obtained by fraud; and *third*, because the respondent, at the time of the execution of it, had not a contracting mind.

The consideration for the sale of this land, is not mentioned in the bond. The instrument is a specialty, however, and, as such, imports a consideration. Such being the case, the burthen of proof is upon respondent, as to this defence, as well as the others. And in this proof, we think, he has entirely failed.

Under the statute of 1843, as well as the Code, the consideration of such an instrument may be impeached. But such an allegation, being in the nature of a plea in avoidance, must be sustained by proof. This proof has not been made. What were the terms of the original contract, or what the consideration for the note, are left entirely vague and uncertain by the respondent's proof. There is nothing to sustain the averment, that the complainant had no claim on the land sold. But aside from this want of proof on the part of respondent, the complainant proves affirmatively, that, in addition to releasing to respondent all right to said quarter section, he also let him have his claim upon another forty acres of timber, and was to, and did, show and point out to respondent, a quarter section of prairie subject to entry. Respondent entered the quarter of timber, got complainant's

VOL. II.                    8

claim on another forty, and had his assistance in selecting a prairie tract, either of which would be a consideration sufficiently valuable to sustain the contract. There is, then, not only an absence of proof to sustain this part of the answer, and the presence of proof to show a consideration, but, as we shall see hereafter, in the consideration of the other defences, respondent repeatedly spoke of the land in dispute as complainant's, and of his intention to make a deed, so soon as he obtained his patent. So that, if the burden of proof was different, we should be constrained to find this issue for complainant. So, also, while it is clear that fraud on the part of the complainant in obtaining the contract, would avoid it, yet such fraud must be proved, and will not be presumed. Fraud is of various kinds, but generally consists in the misrepresentation or concealment of a material fact. It should also appear, that the party injured relied or acted upon the representation made, and that he was vigilant, and not negligent, in making the contract; for it is the vigilant, and not the careless, that equity, as well as the law, protects. In this case, there is not even testimony to show that the complainant made any misrepresentations at the time the note was given, or such as would amount to fraud. But if this had been proved, no proof is made that respondent relied upon such representations, or that he exercised any diligence to inform himself as to the nature of complainant's claim.

But, aside from these considerations, the execution of the bond removes all question as to the consideration and fraud connected with the note. Respondent had the ability to contract, at the time he gave the note. It was outstanding, and as such, was a subsisting liability against him. To have this given up, and to compromise or avoid any suit that might be brought, would be a sufficient consideration for the bond, without reference to any antecedent circumstances. But it is claimed, that this was obtained by fraud, and (which is the same thing in equity), when the respondent had no contracting mind, by reason of his intoxication. As it is not claimed, and could not be under the proof, that

Mansfield v. Watson.

complainant misrepresented or concealed any material fact, at the time the bond was executed, but that the fraud as to this part of the transaction, consists in procuring the contract when the respondent was drunk, we shall consider it alone in that view.

In law, the acts of the drunkard are avoided on the ground of incompetency; in equity, on that of fraud. But as mere moderate drunkenness does not deprive the mind of the power of rational consent, and is not always apparent to others, it should not of itself avoid any deed or contract. In order to avoid the deed or contract, there must be that state of excessive drunkenness which deprives the person of the consciousness of what he is doing. This is the modern English doctrine, and that followed by the courts of this country, as well as of France. Ray's Med. Ins. of Ins. § 450; Story's Eq. Jur. § 231. And this excessive drunkenness is a defence, whether voluntary, or caused by the fraud or procurement of the other party to the contract. 2 Greenlf. Ev. § 374. But there may be such contrivance or management on the part of the plaintiff, to draw the party into drink, and thus to take advantage of his intoxication, as would justify the interposition of a court of equity, on the ground of fraud, even where the drunkenness is less than excessive. Story's Eq. Jur. § 231. In either event, such intoxication only renders the contract voidable, and not void, and the party, on recovering his understanding, may adopt the same. Story on Cont. § 27; *Reiniker* v. *Smith*, 2 Har. & John. 423; *Reynolds* v. *Waller's Heirs*, 1 Wash. 164. In this case, but one witness swears to the intoxication, and he admits that he and complainant are not on friendly terms. All that he states, however, as to the respondent's condition at the time the bond was executed, is, that "he was drunk, and not in a situation to transact business aright." This is a mere opinion of a witness, and giving it all the weight that could be claimed, would fall far short of establishing that drunken condition, which would avoid the bond. But this same witness testifies, that the bond was brought to respondent's house by one Wilson, and that he urged him to

execute it, gave him liquor to drink, and then went with him to complainant's residence, where they had more liquor, and the bond was then executed. Another witness testifies, however, that he wrote the bond for respondent, and at his request; that respondent came to him for that purpose, with one McClung, and that they took the same away with them. He also states that he understood, at the same time, that the bond was to be executed for the purpose of redeeming a note of two hundred dollars, which Mansfield held against respondent. But the whole force of the testimony of the witness who speaks of the intoxication, as well as all the defences set up by the respondent, are abundantly negatived and disproved by several other witnesses, and, indeed, by all the circumstances.

At no time does it appear, that respondent exercised any acts of ownership over this land, notwithstanding he admits that he entered it before he gave the bond, and procured his patent before the bringing of the suit. It does appear, however, that complainant has used and treated the same as his property, without objection, as far as shown, on the part of respondent. It also appears that respondent entered the quarter section of timber, of which this eighty is a part. In March, 1852, he made out under oath, for the assessor, a list of his property, in which he included his half of the quarter, but omitted that now claimed by the complainant. In the spring or summer of the same year, he said to another witness, who spoke to him, at Mansfield's request, about the deed, that he designed sending for his patent that week, and when the messenger returned, he would make the deed. In October, 1852, he stated to another witness, who made out a deed at Mansfield's request, and tendered it to respondent for execution, that he would make the deed so soon as he obtained his patent; that he had understood that complainant had been told, that he would never make him a deed, but that he would, when he received his patent; that he always considered the land as complainant's, and to prove it, referred to the fact that he had never assessed it as his own. These circumstances, and repeated declarations, made and

transpiring months and years after the bond was executed, if not inconsistent with the claim that respondent was incapable of contracting, at least establish the fact that he did, in his sober moments, adopt and recognize the validity of his contract. And if, in addition to these things, we consider that he never, until about the time of bringing this suit, refused to make the deed; that he has at no time pretended to disprove his contract; that he still retains the notes which he admits he received at the time he made the bond, and has thus failed to place the complainant in as good a condition as he was before he parted with the note; it appears to us that this agreement was fair and *bona fide*, and founded upon a good consideration; that there was no such drunkenness as should avoid it in equity, on the ground of fraud, or if so, that it was subsequently adopted; and that it should, therefore, be specifically performed by respondent.

The decree is accordingly reversed, and cause remanded, with instructions to the court below, to enter a decree in accordance with this opinion.