JOEST *v.* WILLIAMS, ADM'R.

FRAUD.—*Pleading.*—Fraud in obtaining the execution of a contract cannot be
pleaded without alleging the facts constituting the fraud.

INTOXICATION.—*Contract.*—The intoxication of a person at the time of his
execution of a contract does not render the contract void, but only voidable;
and to defend against a contract on that ground, it must have been rescinded
by restoring whatever was received as the consideration thereof.

APPEAL from the Posey Common Pleas.

DOWNEY, J.—The appellant filed a claim against the estate
of the appellee's decedent, consisting of a promissory note
executed by the deceased to one Hutson, and by him indorsed
to the appellant. The note was dated the 9th day of Decem-
ber, 1870, and was payable twenty-seven months after date,
and was for two hundred and ten dollars.

The administrator set up as defences to the note, 1. That
the note was obtained by fraud and without any considera-
tion. 2. That the same was obtained by fraud, in this, that
said note was executed by the deceased when he was so
intoxicated as to be wholly ignorant of making or signing
the same. 3. That there was no consideration. 4. That
the deceased never executed the said promissory note

The plaintiff replied to the whole answer by a general
denial, and for a second paragraph of his reply, confined to

the second paragraph of the answer, he alleged that the consideration of the note was the purchase of certain real estate sold by the said Hutson, the payee, to the deceased, and that the deceased kept and retained said real estate until the time of his death, and that the same had been sold by the administrators of the estate of said deceased as part of the property of his estate.

Upon a trial of the issues by the court, there was a finding for the defendant, a motion made by the plaintiff for a new trial overruled, and judgment on the finding.

The error assigned in this court is the overruling of the motion for a new trial.

The reason for a new trial, as stated in the written motion, was, that the evidence was not sufficient to justify the finding of the court.

We think it essential to the proper understanding of what is decided by the court, that we shall set out the evidence in this opinion :

David Robinson testified as follows : "I recognize the note in controversy. I wrote the name of the deceased to said note, at his request, and he made his mark thereto in my presence. I read the note to him before he signed it. He was pretty drunk. He could write his own name, and did generally write his own name. I did not write my name upon the note as an attesting witness until nearly eighteen months after it was executed."

Downey was killed in two or three days after the note was executed. The note was then read in evidence, and the bill of exceptions informs us that, it appearing that the note had not become due at the time of trial, it was agreed between counsel that no objection should be raised on that account, but that if the claim should be allowed, it should be paid at maturity.

Richard H. Hutson testified as follows : "I am the payee of the note. It was executed in my presence. I sold a house and lot in Wadesville to the decedent, and in consideration therefor the decedent, Downey, gave me two notes,

and this note in question for the interest thereon. This note was a part of the consideration for the sale of said house and lot. I executed to him a deed for the house and lot, and he kept it in his possession until he died. I transferred the note to the plaintiff. Downey was pretty drunk when he signed the note, too drunk to write his own name. The execution of the note by him was in pursuance of the contract previously made between us. The next morning after he signed the note, I met him in Wadesville and asked him how he liked his trade. He said he was perfectly satisfied with the trade, and intended to marry in a few days and move into the house. At this time he was not much drunk. In two days afterwards he was killed. He did not in this last conversation mention the note particularly, but the note was given by him to carry out the agreement first made between us. The decedent could write his name." This was all the plaintiff's evidence.

Benjamin Gwaltney, on behalf of the defendant, testified as follows: "I knew the decedent well. I have seen him write often, but never saw him make his mark. I know nothing else about this matter, except what Mr. Cross told me." This was all the evidence given in the case.

The defence that the note was given without consideration is not sustained by the evidence. On the contrary, it seems to have been given for a valuable and sufficient consideration. Counsel for the appellee call attention to that part of the testimony showing that the note in question was given for the interest on the other two notes, and suppose that Hutson had received full value for the house and lot in the other two notes, and when the deceased was intoxicated got him to give this note to obtain additional pay when none was due. It does not appear that this note was given at a different time from that at which the other two notes were given. Nor does it appear that it was not. It was given, however, for interest on the other two notes. It is probable, or possible, to say the least, that the other two notes were given for the principal of the purchase-money of the real

estate, and that the note in question was given at the same time for the interest which was to accrue. But if this note was given after the giving of the other two for the interest that had already accrued, it would not, in either case, be without consideration.

We think there can be no question but that the deceased executed the note. There is no conflict in the evidence as to this. That the deceased could write, but on this occasion chose to make his mark and not to write his name, is a circumstance which cannot control the positive uncontradicted evidence that the signature was written to the note at his request, and that he made his mark thereto in the presence of the witness.

Upon the question as to the other ground of defence there is more room for doubt; that is, whether or not the maker of the note was so much intoxicated as to be incapable of binding himself by the contract. But see *Reinskopf v. Rogge*, 37 Ind. 207. It may be said in this connection, that that part of the reply to the second paragraph of the answer which alleges that the real estate for which the note was given had been sold by the administrator of the deceased, was wholly unsupported by the evidence. The circumstance that on the next day after the note was given, when he was "not much drunk," he expressed himself perfectly satisfied with the trade, cannot have much weight in the case. Counsel for the appellee argue the case, in part, as if there was an answer in showing that the note had been obtained by fraud. But this is a misapprehension. While it is said in one or two of the paragraphs that the note was obtained by fraud and without consideration, we cannot regard that part of these paragraphs which speaks of fraud as amounting to any defence at all. Fraud cannot be pleaded in this general way, but the facts constituting the same must be set out particularly. It is not enough to say that a transaction was fraudulent, or that an instrument was obtained by fraud, but the facts must be alleged. *Curry* v. *Keyser*, 30 Ind. 214.

Conceding that the evidence shows that the deceased, when he executed the note, was too much intoxicated to bind himself by the contract, which, however, may well be doubted, there is a ground on which even that defence must be held to be insufficient, and that is, that the contract was not, on account of the intoxication of Downey, rendered absolutely void, but was only voidable, and that to avoid it he or his representative must have restored what was received by him under the contract, before he could be relieved from its obligation. In *McGuire* v. *Callahan*, 19 Ind. 128, it was said by this court: "The plaintiff seeks to avoid the instrument, on the ground of fraud and drunkenness. He cannot, however, treat the instrument as void, and, at the same time, as good. If the instrument is good, the plaintiff can maintain no action to recover the value of the property thus sold, if the defendant has performed the stipulations to be by him performed, which, for aught that appears, he has done. If the instrument is voidable, either on the ground of fraud or drunkenness, the plaintiff, before he can avoid it and maintain an action for the value of the property thus transferred, must place the defendant *in statu quo*, by refunding to him what he has advanced in pursuance of the contract. * * * This doctrine, in our opinion, is as applicable to contracts voidable on the ground of drunkenness, as those voidable on the ground of fraud. Drunkenness does not make a contract void, but only voidable. 1 Story Con., sec. 45, and authorities in note 4, p. 86."

We adhere to this authority as a correct exposition of the law on the subject, and hold that the note which is in controversy in this case is not, on account of the intoxication of the maker at the time of its execution, absolutely void, but only voidable. It follows, according to a well settled rule of law, that to enable the maker or his representative to defend successfully on that ground, there must have been a rescission of the contract, by placing the parties *in statu quo*. As it appears that the maker of the note, as alleged in the second paragraph of the reply, received a deed of convey-

ance for the real estate for which, in part, the note was given, and it is not alleged or shown by the evidence that he or his representatives ever reconveyed the title, or in any way properly rescinded the contract, the court should have found for the plaintiff upon the evidence, instead of finding for the defendant.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.

*E. M. Spencer* and *W. Loudon*, for appellant.

*A. P. Hovey* and *G. V. Menzies*, for appellee.