## COODY v. COODY *et al.*

No. 3026.   Opinion Filed November 18, 1913.

(136 Pac. 754.)

1.   **APPEAL AND ERROR**—Ruling on Demurrer—Presumption. Where the two defendants in an action file separate demurrers to a petition, charging (1) a misjoinder of causes of action, (2) that the petition failed to state facts sufficient to constitute a cause of action against the demurrant, and the court sustains the demurrer generally, and the record being silent as to the ground or grounds of the decision, it will be presumed that the demurrer was sustained upon the latter ground.

2.   **PLEADING**—Demurrer—Misjoinder.   The test of whether there is more than one cause of action stated or attempted to be stated in a petition in a suit in equity is whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication.   If there is, the pleading is demurrable.

3.   **SAME.**   Where a general demurrer is filed to a petition as a whole, if any paragraph of the pleading is good and states a cause of action, a demurrer should be overruled.

4.   **DEEDS**—Assent—Intoxication.   A deed, executed by a person so destitute of reason as not to know the nature or consequences of his act, though his incompetency be produced by intoxication, is voidable and may be avoided by himself, though the intoxication was voluntary and not produced by the circumvention of the other party.

5.   **INDIANS**—Disaffirmance of Contract—Inability to Restore Consideration.   In a suit in equity brought by a Cherokee Indian, immediately upon attaining his majority, to cancel certain leases and a mortgage given by him during minority on his allotted lands, a petition which charged that all of the money paid him on account thereof during his minority had been spent and squandered prior to attaining his majority sufficiently excused the failure of an offer to return the consideration received.

(Syllabus by Sharp, C.)

*Error from District Court, Washington County;*
*John J. Shea, Judge.*

Action by Edward Coody against D. R. Coody and Chas. O'Keiffe.   From a judgment sustaining a demurrer to plaintiff's amended petition, plaintiff brings error.   Reversed and remanded.

*Haskell B. Talley,* for plaintiff in error.

*P. J. Carey* and *W. C. Franklin,* for defendants in error.

Opinion by SHARP, C.   On September 13, 1909, plaintiff in error, plaintiff below, brought suit in the district court of Washington county against defendants in error, defendants below, seeking the cancellation of certain leases, a mortgage, and a deed on lands in said county theretofore owned by him. It appears from the petition:  That plaintiff was a one-fourth blood Cherokee citizen, and the lands covered by the instruments sought to be cancelled constituted his allotment of lands in the Cherokee Nation.   That at all times prior to August 31, 1909, plaintiff was a minor, under the age of 21 years, and was poorly educated, being scarcely able to read and write the English language, and totally ignorant and inexperienced in business affairs.   That he had executed instruments affecting said lands as follows:   Oil and gas lease during the month of January, 1909, to the defendant D. R. Coody; mortgage to defendant O'Keiffe during the month of March, 1909; oil and gas mining lease also to the defendant O'Keiffe during the same month; oil and gas mining lease during the month of May, 1909, to the defendant O'Keiffe; and warranty deed August 31, 1909, to the defendant O'Keiffe.   That during the month of March, 1909, the oil and gas lease, executed to defendant Coody, was by him assigned to the defendant O'Keiffe, and that all of said instruments had been recorded in the office of the register of deeds for Washington county.   That the total consideration received by him on account of the said several instruments did not exceed the sum of $400, $75 of which was paid at the time of the execution of the warranty deed.

Various grounds for setting aside the said instruments are charged in the amended petition, among which are:   (1) Legal disability of infancy at the time of the execution of said instruments, except that of August 31, 1909;  (2) that, at the time all of said instruments were executed, plaintiff was under the influence of intoxicants and wholly unable to transact business and understand the nature of the instruments signed;  (3)

undue influence practiced upon him by a kinsman and confidential adviser, the defendant D. R. Coody; (4) conspiracy to defraud; (5) duress; (6) inadequacy of consideration. To the petition as amended the defendants filed their separate demurrers, each upon the same grounds, namely: (1) That the petition did not state facts sufficient to constitute a cause of action against the demurring defendant; (2) that several causes of action were improperly joined.

These demurrers were sustained, but upon what ground the journal entry does not show. Had the court sustained them upon the ground of misjoinder of causes of action, it would have been its duty to so state at the time in order to afford plaintiff an opportunity to move to be allowed to file separate petitions, each to include such of said causes of action as might have been joined, and had them each docketed pursuant to section 4743, Rev. Laws 1910. *Weber v. Dillon,* 7 Okla. 568, 54 Pac. 894; *Goldsborough v. Hewitt,* 23 Okla. 66, 99 Pac. 907; *Owen et al. v. City of Tulsa et al.,* 27 Okla. 264, 111 Pac. 320. As the court made no such indication, and counsel were therefore afforded no opportunity, it is but fair to presume that the court sustained the demurrer upon the ground that the petition failed to state a cause of action.

In passing, however, we may say that it has been said upon high authority (Abbott's Trial Brief, Pleadings, pp. 739, 740) that the test of whether there is more than one cause of action stated or attempted to be stated in a petition in a suit in equity is whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication. If there is, the pleading is demurrable. Our statute (section 4738, Rev. Laws 1910) provides for the uniting of several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable, or both, where they all arise out of one of the classes therein named. Under this provision of the statute, claims affecting several defendants, such as might have been brought within the compass of a single suit in equity, may be regarded as one

cause of action; and in such suits, therefore, equitable rules as to the joinder of parties defendant are still applicable.

The second ground of demurrer being general, no attempt being made to specify distinctly the grounds of objection urged to the petition, if there is one paragraph in the petition which states a cause of action, such demurrer must be overruled. *Hanenkratt v. Hamil,* 10 Okla. 219, 61 Pac. 1050; *Berry v. Geiser Mfg. Co.,* 15 Okla. 364, 85 Pac. 699; *Cockrell v. Schmitt,* 20 Okla. 207, 97 Pac. 521, 129 Am. St. Rep. 737; *Emmerson v. Botkin,* 26 Okla. 218, 109 Pac. 531, 29 L. R. A. (N. S.) 786, 138 Am. St. Rep. 953. The amended petition charges that the defendants, acting together, wrongfully conspired to cheat and defraud plaintiff of his land, and that the said deed of August 31, 1909, was the final consummation of a scheme theretofore entered into by said defendants at and during the time said leases and the said mortgage were taken, and that, at the time all of said instruments were made, the plaintiff was under the influence of intoxicants and wholly unable to transact business and understand the nature of the instruments by him signed.

Without passing upon the sufficiency of the petition as to the other grounds upon which relief was sought, we think the court erred in sustaining the defendants' demurrers, for if, at the time the deed of August 31, 1909, was executed, plaintiff was so under the influence of intoxicants as to be wholly unable to transact business and to understand the nature of the deed which he signed, he may plead his disability from such drunkenness in an action to cancel the deed. Intoxication which is absolute and complete, so that the party is for the time entirely deprived of the use of his reason and is wholly unable to comprehend the nature of the transaction and of his own acts, is a sufficient ground for setting aside or granting other appropriate affirmative relief against conveyance or contract made while in that condition, even in the absence of fraud, procurement, or undue advantage by the other party. Pomeroy's Equity Jurisprudence, sec. 949. The following texts announce the rule applicable to the question presented by the demurrer: Story on Contracts, p. 15:

"Drunkenness must be such as to incapacitate the party from the proper exercise of his judgment and prevent him from understanding his contract."

Clark on Contracts, pp. 274, 275:

"A contract made by a person while he is so drunk as to be incapable of understanding its nature and effect is voidable, * * * (but his intoxication) must be so excessive as to render him incapable of knowing what he is doing."

In Bishop on Contracts, secs. 980, 981, it is said:

"Intoxication so deep as to take away the agreeing mind (in other words, to disqualify the mind to comprehend the subject of the contract and its nature and probable consequences) impairs such contract, if made while it lasts, the same as insanity. To have this effect, it must render the party *non compos mentis* for the action."

Anson on Contracts, p. 150:

"The contract of a * * * drunken person is voidable, at his option, if it can be shown that at the time of making the contract he was absolutely incapable of understanding what he was doing."

1 Benjamin on Sales, sec. 30:

"A drunkard, when in a state of complete intoxication, so as not to know what he is doing, has no capacity to contract."

In 1 Pothier, Obligations on Contracts, 49:

"It is evident that drunkenness, when it goes so far as to absolutely destroy the reason, renders a person in this state, so long as it continues, incapable of contracting, since it renders him incapable of consent."

11 A. & E. Enc. L. p. 773:

"An express contract, entered into when the obligor is in a state of intoxication, so as to deprive him of the exercise of his understanding, is voidable."

The early law, as well as the modern rule of decision, with the reason for the change, is perhaps nowhere better expressed than in *Cameron-Barkley Co. v. Thornton Light & Power Co.*, 138 N. C. 365, 50 S. E. 695, 107 Am. St. Rep. 532, from which we quote at length:

"The question presented for our consideration arises upon an exception to the charge of the court regarding the drunkenness of the plaintiff's agent and its sufficiency to avoid the contract. It is held by some authorities to be a principle of the

common law that every contract, which a man *non compos mentis* makes, is voidable, and yet shall not be avoided by himself, because it is a maxim in law that no man of full age shall be, in any plea to be pleaded by himself, received by the law to stultify himself and to set up his own disability in avoidance in his acts. *Beverly's Case,* 4 Rep. 123. And Coke, as appears in his Institutes, was of the same opinion: 'As for a drunkard who is *voluntarius daemon,* he hath (as hath been said) no privilege thereby, but what hurt or ill soever he doth, his drunkenness doth aggravate it.' Coke on Littleton, 247a. But Blackstone observes that this doctrine sprung from loose authorities and he evidently agrees with Fitzherbert, who rejects the maxim as being contrary to reason. 2 Blackstone's Commentaries, 291. Whatever was the true principle of the common law as anciently understood, there can be no doubt that since the reign of Edward III, if not since the time of Edward I, it has been settled according to the dictates of good sense and common justice that a contract made by a person so destitute of reason as not to know the nature and consequences of his contract, though his incompetence be produced by intoxication, is void, and even though his condition was caused by his voluntary act and not procured through the circumvention of the other party. Mere imbecility of mind is not sufficient as a ground for avoiding the contract when there is not an essential privation of the reasoning faculties or an incapacity of understanding, 2 Kent's Commentaries, 451. This court has adopted Coke's definition that a person has sufficient mental capacity to make a contract if he knows what he is about. *Moffit v. Witherspoon,* 32 N. C. 185; *Paine v. Roberts,* 82 N. C. 451. And it has been held not error to charge that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its full extent and effect. *Cornelius v. Cornelius,* 52 N. C. 593. The doctrine that a party may plead his own disability to defeat the alleged contract arises out of the very nature of a contract, which requires that the minds of the parties should meet to a common intent, and, if one of them has not 'the agreeing mind,' the contract cannot be formed. In *Hawkins v. Bone,* 4 Fost. & F. 311, Chief Baron Pollock, said: 'But the law of England is that a man is not liable on a contract alleged to have been made by him in a state in which he was not really capable of contracting. A contract involves a mutual agreement of two minds, and, if a man has no mind to agree, he cannot make a valid contract'—and the question at last is whether he was wholly incapable of

any reflection or deliberate act, so that in fact he was unconscious of the nature of the particular transaction. It is not necessary that he should be able to act wisely or discreetly, nor to effect a good bargain, but he must at least know what he is doing. So far as the legal incapacity is concerned, it can make no difference from what cause it proceeded, whether from the party's own imprudence or misconduct, or otherwise. It is the state and condition of the mind itself that the law regards and not the causes that produced it. If from any cause his reason has been dethroned, his disability to contract is complete. *Bliss v. Connecticut, etc., R. Co.,* 24 Vt. 424. The master of the rolls (Sir William Grant) in *Cook v. Clayworth,* 18 Ves. 15, said: 'As to that extreme state of intoxication that deprives a man of his reason I apprehend that, even at law, it would invalidate a deed obtained from him while in that condition.' Lord Ellenborough in *Pitt v. Smith,* 3 Camp. 33, thus states the doctrine: 'You have alleged that there was an agreement between the parties, and this allegation you must prove, as it is put in issue by the plea of not guilty; but there was no agreement between the parties if the defendant was intoxicated in the manner supposed when he signed this paper. He had not an agreeing mind. Intoxication is good evidence upon a plea of *non est factum* to a deed, of *non concessit* to a grant, and of *non assumpsit* to a promise.' The authorities sustaining the view of the law we have stated and adopted are quite numerous. Clark on Contracts (2d Ed.) p. .186; Parsons on Contracts (9th Ed.) p. 444; *Matthews v. Baxter,* L. R. Ex. 132; *Webster v. Woodford,* 3 Day (Conn.) 90; *Van Wyck v. Brasher,* 81 N. Y. 260; *Bursinger v. Bank of Watertown,* 67 Wis. 75, 30 N. W. 290, 58 Am. Rep. 848; *Bush v. Breinig,* 113 Pa. 310, 6 Atl. 86, 57 Am. Rep. 469; *Bates v. Ball,* 72 Ill. 108; *Wright v. Fisher,* 65 Mich. 275, 32 N. W. 605, 8 Am. St. Rep. 886; 14 Cyc. 1103; 17 Am. & Eng. Ency. of Law (2d Ed) 399. It was held in *King v. Bryant,* 3 N. C. 394, that if a man was so drunk at the time of signing a bond that he did not know what he was doing, and while in that condition he was induced to sign the instrument, it was a fraud upon him which vitiated the bond, even in an action at law upon it, and to the same effect is the decision of the court in *Gore v. Gibson,* 13 Mees. & W. 623, opinion of Parke, B. In the latter case, Pollock, C. B., said: 'Although formerly it was considered that a man should be liable upon a contract made by him when in a state of intoxication, on the ground that he should not be allowed to stultify himself, the result of

the modern authorities is that no contract made by a person in that state, when he does not know the consequences of his act, is binding upon him. That doctrine appears to me to be in accordance with reason and justice.' "

The rule is also well stated and the authorities reviewed in *Wright v. Waller*, 127 Ala. 557, 29 South. 57, 54 L. R. A. 440.

The notes in these two cases contain citations of decisions of many of the courts, both American and English, and from which we may epitomize as follows: The rule formerly was that intoxication was no excuse and created no privilege or plea in avoidance of a contract; but it is now settled, according to the dictates of good sense and common justice, that a contract made by a person so destitute of reason as not to know the consequences of his contract, though his incompetence be produced by intoxication, is voidable and may be avoided by himself, though the intoxication was voluntary and not produced by circumvention of the other party. This language is repeated with approval in *Bush v. Breinig*, 113 Pa. 310; 6 Atl. 86, 57 Am. Rep. 469; *Fowler v. Meadow Brook Water Co.*, 208 Pa. 473, 57 Atl. 959. And such is the rule announced by the authorities of the present time: *Donelson v. Posey*, 13 Ala. 752; *Phelan v. Gardner*, 43 Cal. 306; *Hale v. Stery*, 7 Colo. App. 165, 42 Pac. 598; *Mattair v. Card*,, 18 Fla. 762; *Bates v. Ball*, 72 Ill. 109; *Joest v. Williams*, 42 Ind. 565, 13 Am. Rep. 377; *Mansfield v. Watson*, 2 Iowa, 111; *Carpenter v. Rogers*, 61 Mich. 384, 28 N. W. 156, 1 Am. St. Rep. 595; *Cavender v. Waddingham*, 5 Mo. App. 457; *Longhead v. Combs, etc., Com. Co.*, 64 Mo. App. 559; *Johnson v. Phifer*, 6 Neb. 401; *French v. French*, 8 Ohio, 214, 31 Am. Dec. 441; *Birdsong v. Birdsong*, 2 Head (Tenn.) 289; *Barrett v. Buxton*, 2 Aiken (Vt.) 167, 16 Am. Dec. 691; *Conant v. Jackson*, 16 Vt. 335; *Bursinger v. Bank of Watertown*, 67 Wis. 75, 30 N. W. 290, 58 Am. Rep. 848. From the foregoing cases, and upon principle, the failure of the amended petition to charge that plaintiff's intoxication was designedly brought about or caused by defendants is immaterial. It is the existence at the time of the

necessary degree of intoxication which controls, and not by whom or by what means the intoxication was brought about.

As already observed, the several instruments were each made during the year 1909, the deed on August 31st. Plaintiff's suit was instituted September 13, 1909, or only two weeks after the execution of the warranty deed. It is insisted on the part of defendants in error that, before plaintiff could bring his suit, it was a necessary condition precedent to entering a court of equity that he restore or offer to restore the consideration received. The petition charges that all of the money paid him during his minority he had spent and squandered, but, as to the $75 paid him on the date that he attained his majority, this he offered to return to the defendants. The petition, in the latter particular, is not attacked. Was it necessary, therefore, to offer to return the consideration paid him during infancy, which money had been dissipated? In *Blakemore v. Johnson,* 24 Okla. 544, 103 Pac. 554, attention was called to the conflict of authorities upon this subject, and it was there held that the rule which seemed to be the most generally followed by the courts was that an infant is not to be defeated in his effort to disaffirm and avoid his contracts by his inability to return the consideration received by him. See, also, *Stevens v. Elliott,* 30 Okla. 41, 118 Pac. 407; *Gill v. Haggerty,* 32 Okla. 407, 122 Pac. 641; *Tirey v. Darneal,* 37 Okla. 611, 132 Pac. 1087; *Tirey v. Darneal,* 37 Okla. 606, 133 Pac. 614; *Colbert v. Alfrey,* 168 Fed. 231, 93 C. C. A. 517; *MacGreal v. Taylor,* 167 U. S. 688, 17 Sup. Ct. 961, 42 L. Ed. 326.

Nor is the present case influenced by the fact that the several instruments executed by plaintiff, affecting his allotted land, were made since the passage of the Act of Congress of May 27, 1908 (35 St. at L. 312, c. 199), removing restrictions upon alienation or incumbrance of allotted lands of members of the Five Civilized Tribes, "enrolled as * * * mixed-blood Indians, having less than half Indian blood, including minors," according to the rule announced in *Blakemore v. Johnson, supra;* even though the instruments executed during infancy were voidable and not void, an offer to restore the consideration, it having

been squandered and spent, was necessary. While the plaintiff's amended petition is loosely drawn, and it may well be doubted if, independent of the allegation of inability to contract on account of intoxication, it states a cause of action, yet in this regard we deem it sufficient and conclude that the court erred in sustaining defendants' separate demurrers.

The judgment of the trial court should be reversed, and the cause remanded, with leave to amend, if desired.

By the Court: It is so ordered.