## NUNLEY v. LOFTIS.

No. 11436—Opinion Filed Oct. 9, 1923.

Rehearing Denied Nov. 27, 1923.

Second Rehearing Denied June 17, 1924.

(Syllabus.)

1. **Public Lands—Tenancy in Common—Invalidity of Contract by School Land Lessees.**

An agreement, by school land lessees, to the effect that they will purchase their leasehold jointly and hold same as cotenants, is against public policy and void, and no action, either at law or equity, can be predicated thereon.

2. **Same—Issuance of Joint Certificates of Purchase by Mistake — Relief — Resulting Trust.**

When the Commissioners of the School Land Department through inadvertence, mistake, or by agreement between the purchasers, issue certificates of purchase, jointly, for state school lands, and thereafter it is conclusively shown that the parties have at all times owned, occupied, and controlled the tracts occupied by them, respectively, each to the exclusion of the other, and that neither party has ever at any time contributed to, or paid any part of the consideration paid for the separate tract, occupied by the other, such state of facts establishes an implied or resulting trust that may be enforced by the parties, one against the other.

3. **Appeal and Error—Questions of Fact—Conclusiveness of Findings.**

Where a case is tried by the court without the intervention of a jury upon controverted questions of facts, and there is evidence reasonably tending to support the findings of the trial court, such findings will not be disturbed on the weight of the evidence. Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and

is conclusive upon this court upon all doubtful and disputed questions of fact.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Beckham County; T. P. Clay, Judge.

Action by James M. Loftis against Thomas J. Nunley. Judgment for plaintiff, and defendant brings error. Affirmed.

T. R. Wise, for plaintiff in error.

Arthur Leach, for defendant in error.

Opinion by JONES, C. This is an appeal from the judgment and decree of the district court of Beckham county, in favor of defendant in error, plaintiff below, James M. Loftis, and against plaintiff in error, defendant below, Thomas J. Nunley, in a proceeding for the partition of certain lands in Beckham county, for which joint certificates of purchase were alleged to have been issued by the Commissioners of the Land Office to the parties.

The lands in controversy consisted of two tracts containing about 100 acres each, and were school lands and formerly leased to one Riggs, who sold or assigned his preference rights in one of the tracts to Loftis, and the other tract to B. M. Jackson, who subsequently sold or transferred same to plaintiff in error Nunley.

The tracts were, by the School Land Department, appraised separately, and likewise the improvements situated on each tract when the lands were purchased from the state in 1916, at a sale of the school lands, each tract was purchased at the appraised value by the respective occupants, Loftis and Nunley, and for some reason, which is not explained by the records in this case, the School Land Commissioners, in issuing certificates of purchase for said lands, issued a joint certificate of purchase to each of the school land lessees, which is as follows:

"Certificate of Purchase.

"Commissioners of the Land Office of the "State of Oklahoma.

"Know all Men by these Presents:

"That whereas, on the 31 day of March A. D. 1916, Thomas J. Nunley and James M. Loftis of Texola, in the state of Oklahoma, and a qualified person did at public auction held in the city of Sayre in the state of Oklahoma, enter into a contract of purchase from the Commissioners of the Land Office of the state of Oklahoma, acting for and on behalf of said state, all of the following school and state land, to wit:

"Lots one and two and the east half of the northeast quarter of section 36, in township 9 north of range 27 west of the Indian Meridian in Beckham county in said state upon the following terms and conditions:

"First: That as a consideration for said sale and purchase the said purchaser would pay to the state of Oklahoma the sum of $1,800 at the following times and the following manner, to wit:

"Five per centum of the said purchase price to be paid on the execution and delivery of the contract of purchase, and the remainder to be paid, etc._____

"Dated at Oklahoma City, in the state of Oklahoma, on this the 31st day of May A. D., 1916.

"Commissioners of the Land Office of the State of Oklahoma.

"By M. E. Trapp,

"Acting Governor and Chairman."

—and a like certificate was issued for the other tract.

There seems to have been considerable difference in the value of the two tracts of land, and the plaintiff in error, Nunley, contends that it was the understanding that he and Loftis were to own the lands jointly, while the defendant in error, Loftis, denies that there was any such understanding or agreement, and contends that it was agreed that each of the parties should own, control, and occupy separately and exclusively the tract he then occupied and that the certificates of purchase were issued jointly because the lands originally had been leased in one body to the original lessee, Riggs.

The evidence as disclosed by the record fails to show any specific contract or agreement sustaining the contention of plaintiff in error, and while he was a witness in the case, he does not pretend to say that any agreement was ever had between him and Loftis to the effect that they should hold the lands jointly, and he is left to rely entirely on the fact that the certificates of purchase were issued to them jointly. The evidence discloses that in the purchase of the lease and preference right from the original lessee and his assigns, the plaintiff in error, Nunley, purchased the tract upon which he resides and paid for same, and, likewise, the defendant in error, Loftis, purchased the tract upon which he resides and paid the consideration therefor. The same condition existed when the purchase from the state was made, each paying the amount required by the state for the particular

tract upon which he resided, and there is nothing to indicate from the evidence that there was ever any agreement to the effect that they were to hold the land jointly, and there were no acts or conduct on the part of either that would justify the implication of such an agreement. The evidence does disclose that the plaintiff in error, Nunley, at one time cultivated a small portion of the land occupied by Loftis, but it also discloses that on one occasion at least, he paid a cash rental of $2 per acre per annum for same.

Plaintiff in error contends that the judgment of the lower court should be reversed, the matter having been submitted to the court without the intervention of a jury, and the court having found that the litigants were entitled to hold and occupy the tracts separately, and the tracts upon which they had erected improvements and were occupying, and that no cotenancy or joint ownership existed.

Plaintiff in error raises the question that the allegations of a specific agreement will not support the finding of an implied agreement, and if only an implied agreement is shown by the evidence, it constitutes a failure of proof and is a material variance between the pleadings and proof and cites the case of Chambers v. Van Wagner, 32 Okla. 774, 123 Pac. 1117, and other authorities in support of this contention; but this is a question of fact submitted to the court and determined adversely to plaintiff in error's contention, and we think the facts proven justify the conclusion reached, and are sufficient to establish an implied or resulting trust, and, while a resulting trust is not specifically pleaded, the facts pleaded and proven are sufficient upon which to base same. The only fact upon which plaintiff in error can rely is that the certificate of purchase was issued to them jointly. This alone would not, in our judgment, be sufficient to establish cotenancy or joint ownership, and especially is this true in view of the provision of the Rev. Laws 1910, section 7160, Comp. Stat. 1921, section 9338:

"Affidavit of Purchase. Before any certificate of purchase is issued for any part or parcel of the public lands of this state, the purchaser thereof shall make an affidavit that the land purchased is for his own use and benefit and not either directly or indirectly for the use and benefit of any other person, firm, association, or corporation. In the event that such purchaser fails or refuses to fully comply with all the requirements of law

and the rules and regulations of the commissioners of the land office, authorized by law, governing sales of the land sold under the provisions of this article and to make such affidavit, the deposit required in the second preceding section hereof shall be forfeited to the state for the benefit of the fund for which the land is sold."

And to permit the execution and fulfillment of such a contract as is pleaded and relied upon by plaintiff in error, in his answer and cross-petition, would be in violation of the spirit of the provision above cited. In this case there were no bidders, the lessees took the land by reason of their preference rights as provided in section 7147, Rev. Laws 1910, at the appraised value, and were permitted to do so by reason of the force and effect of the preference rights which only apply to the lessee of the lands and upon which he owns the improvements. In accordance with the provision in section 7158. Rev. Laws 1910, any contract or agreement in violation of these provisions has been declared void by the courts of this state. Higgins v. Butler, 10 Okla. 345, 62 Pac. 811; Prince v. Gosnell, 19 Okla. 175, 92 Pac.164.

And many other Oklahoma authorities so hold; and by the great weight of authority, it seems to be the well-established rule that the state is only authorized to sell the school lands to the lessees for their own use and occupation, and not for, or on account of, or at the solicitation of another, and before patent issues the purchaser is required to make satisfactory proof of his residence for a given period, and in fact all the prerequisite required is contrary to the idea that the lands could be held jointly. Plaintiff in error also cites Kine v. Turner (Ore.) 41 Pac. 664, in which we find the following statement:

"And again, it seems to us, the contract is in violation of the manifest theory of the act of 1885, which is that the land should be sold only to bidders desiring it for their own exclusive use and occupation. It requires each purchaser to make oath or affirmation, at the time of making his purchase, that he is purchasing the land for 'his own use and occupation and not for or on account of or at the solicitation of another, and that he has made no contract whereby the title shall directly inure to the benefit of another'; and, before patent shall issue, he is required to make 'satisfactory proof that he has resided upon the lands purchased at least one year and has reduced at least twenty-five acres to cultivation.' These

provisions clearly indicate the policy of the government to dispose of the lands for the actual use and occupation of the purchaser, and not for speculative purposes; and, while it may be true that the act contains no express prohibition against a contract of alienation made before the purchase, yet it cannot be consummated in such case without perjury; and the courts have uniformly, and with one voice, declared that a court of equity will have nothing to do with the enforcement of a contract (which can only be carried out by perjury, and which was entered into in defiance of the clearly-expressed will of the government."

These authorities are cited by plaintiff in error, and relied upon to maintain his contentions, but, in our judgment, they are more in conflict with the position and attitude occupied by the plaintiff in error. than they are to the position and contention of defendant in error.

Plaintiff in error, defendant below, in his answer and cross-petition alleges that the plaintiff and defendant are cotenants and joint owners and jointly interested in the lands, but it is to the best interest of said parties, and especially of this defendant, that there be a partition of the joint interests and estates of this plaintiff and defendant in said lands; and this defendant desires a partition of said lands and of the respective interests of this plaintiff and defendant therein. And further alleges that it will be practically impossible to make an equal and equitable division of said land between plaintiff and this defendant, both on account of the unequal value of the several portions thereof and on account of the balance of purchase price and liens for same, and asks that said land be sold and the proceeds partitioned between plaintiff and defendant. The authorities and statute cited would clearly prohibit the rendition of such a judgment as prayed for by plaintiff in error, defendant below, in his cross-petition.

Plaintiff in error makes other contentions to the effect that the contract as pleaded by the defendant in error is void as against public policy, and that it is in violation of the statute of frauds, but all of these contentions and the authorities cited, in our judgment. are more applicable to the contract which plaintiff in error seeks to enforce than they are to the contract relied upon by the defendant in error.

Where matters of fact are tried before the court without the intervention of a jury, the judgment rendered is entitled to the same weight and consideration that would be given a verdict by a jury and should not be disturbed on appeal, unless same is clearly against the weight of the evidence. Bretch Bros. v. Winston & Sons, 28 Okla. 626, 115 Pac. 796, wherein the court said:

"It has time and again been held by this court that: where a case is tried by the court without the intervention of a jury upon controverted questions of facts, and there is evidence reasonably tending to support the findings of the trial court, such findings will not be disturbed on the weight of the evidence. Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact."

And the same rule is announced in Interstate Bldg. & Loan Co. et al. v. Oklahoma City, 84 Okla. 227, 203 Pac. 172, and in many other Oklahoma opinions.

The court found that these parties were entitled to hold and should have set aside to them the particular tracts which they were then occupying and had at all times occupied, each to the exclusion of the other, and that in fact there was no cotenancy or joint interest existing between them. The court in rendering judgment seems to have followed the provision of section 4955. Rev. Laws 1910, on "Partition," and after having found the facts as above stated, he appointed a commission to designate these particular tracts and appraise same, which was done as required by law and due return made thereof. And the court in approving and confirming the report of the appraisers, makes practically the same order as he had theretofore made and makes no disposition of the difference in value shown by the appraisement returned by the commissioners. This proceeding possibly confused the issues involved to some extent and as we view it, was entirely unnecessary; however, we cannot see that it has prejudiced the rights of either party in any particular, and we think the court's conclusions above set forth as to the law and the facts were substantially correct. The court evidently acted on the theory that the facts in the case established a resulting trust, and that while the legal title was held jointly, that in fact it was merely held in trust for the benefit of the respective owners and occupants of the two separate

tracts of land, which, we think, is in keeping with the authority cited by the defendant in error, and the only reasonable and legal construction that could be given to such transaction. See Coody v. Coody et al., 39 Okla. 719, 136 Pac. 754; Cook v. Warner, 41 Okla. 781, 140 Pac. 424.

Pomeroy's Equity, section 1031, says:

"In all species of resulting trusts, intention is an essential element, although that intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the legal title as the beneficial owner, but that a trust was to arise in favor of the party whom equity would regard as a beneficial owner under the circumstances. * * * The intent appears or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such a case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity seems to be the real owner."

This rule, we think, is applicable to the facts in this case and entitled Loftis to the relief sought and obtained.

Finding no substantial error, we, therefore, recommend that the case be affirmed.

By the Court: It is so ordered.